**TYLER GAS SERVICE COMPANY, and City of Tyler, Texas, Petitioners,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

**United Gas Pipe Line Company, Intervenor.**

**No. 13623.**

United States Court of Appeals District of Columbia Circuit.

Argued June 10, 1957.

Decided Aug. 1, 1957.

Mr. Bryce Rea, Jr., Washington, D. C., and Mr. Thomas B. Ramey of the bar of the Supreme Court of Texas, pro hac vice, by special leave of court, Tyler, Tex., with whom Mr. Donald E. Cross, Washington, D. C., was on the brief, for petitioners.

Mr. Louis L. DaPra, Atty., Federal Power Commission, of the bar of the Supreme Court of Indiana, pro hac vice, by special leave of court, Washington, D. C., with whom Messrs. Willard W. Gatchell, Gen. Counsel, Federal Power Commission, Howard E. Wahrenbrock, Sol., Federal Power Commission, and W. Russell Gorman, Asst. Gen. Counsel, Federal Power Commission, Washington, D. C., were on the brief, for respondent.

Mr. Thomas Fletcher, Houston, Tex., with whom Mr. C. Huffman Lewis, Shreveport, La., was on the brief, for intervenor.

Mr. William C. Chanler, New York City, with whom Mr. Lawrence A. Baker, New York City, was on the brief, for McMurrey Refining Co., as amicus curiae, urging reversal.

Before BAZELON, WASHINGTON and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This proceeding is to review an order of the Federal Power Commission (hereinafter called the Commission) denying a motion of Tyler Gas Service Company (hereinafter called Tyler Gas) for refund of sums paid to intervenor, United Gas Pipe Line Company (hereinafter called United), and two joint petitions by Tyler Gas and the City of Tyler to reject rate schedules filed by United to increase rates specified in a contract between Tyler Gas and United.

The record discloses that the franchise of Tyler Gas as distributor of natural gas for the City of Tyler was to expire in 1946. In that year, natural gas was in abundant supply in the vicinity of the City of Tyler, by reason of the proximity of a number of producing fields. As the expiration of the Tyler Gas franchise neared, a group of citizens appeared before the Tyler City Commission with the proposal that the franchise be not renewed, that a new distributing company be organized, which would procure its gas from new sources at a price less than Tyler Gas paid United, its supplier, and suggesting that greatly reduced rates thus might be made available to the consumers. The City Commission was quite receptive to this proposal and, for a period of several months, had it under consideration.

Tyler Gas wished its franchise renewed, and United was anxious to retain this market for its product. After considerable negotiation, United consented to a reduction in price to Tyler Gas for domestic consumption, from 22½¢ to 12¢ per MCF, if the City of Tyler would renew the Tyler Gas franchise. A new franchise was prepared, specifying the rates to be charged consumers, the rates being predicated on a rate of 12¢ per MCF from United to Tyler Gas for domestic and 80% of the amount received by Tyler Gas, though in no event less than 7.2¢ per MCF for industrial gas.

On April 3, 1946, United addressed a letter to the City of Tyler wherein United agreed that such rates would be

the maximum rates which United would charge Tyler Gas for a period of sixteen years. In reliance on the representation of United, the proponents of the new and competing company withdrew the application for its franchise, the City of Tyler renewed the franchise of Tyler Gas for a period approximating the life of the contract, and the original contract between United and Tyler Gas was amended accordingly. The amended contract was to run until 1962.

By the Commission's Order No. 144, dated October 30, 1948, it was provided that existing rate schedules, which set forth rates in terms of percentages of receipts, should be replaced by schedules setting forth the rates in terms of dollars and cents per unit. This order was issued to bring all rate schedules in line insofar as terms of dollars and cents per unit were concerned, and was not the result of independent action on the part of United, Tyler Gas or the City of Tyler. On July 30, 1952, United filed with the Commission a so-called "conversion tariff," in accordance with Order No. 144.

The contract with Tyler Gas covered both industrial and domestic sales. The conversion tariff slightly increased the rate on industrial sales and decreased it on domestic sales, with a resultant small increase in the rates at that time being paid under the contract.

On June 24, 1953, United filed schedules of increased rates for both domestic and industrial gas and, on July 10, 1953, the Commission issued an order suspending the increased rates for five months, pending a hearing. This suspension did not apply to rates applicable to sales for industrial use only. Tyler Gas intervened in the proceedings and opposed the rates.

In December 1953, Tyler Gas and the City of Tyler filed a complaint with the United States District Court for the Eastern District of Texas, seeking a preliminary injunction to restrain United from putting its increases into effect, and for declaratory judgment declaring the contracts to be valid and existing. The District Court denied the application for preliminary injunction and, on motion of United, dismissed the complaint. The United States Court of Appeals for the Fifth Circuit affirmed. Tyler Gas Service Co. v. United Gas Pipe Line Co., 1954, 217 F.2d 73.

During the pendency of the proceedings in the Fifth Circuit, hearings were held for the purpose of considering a proposal for settlement of United's schedule of general rate increases, and Tyler Gas requested that this settlement remain open for the determination of the issues raised in the petition to intervene by Tyler Gas. This was done.

Following the decision by the Supreme Court in the Mobile case,[1] Tyler Gas filed a motion for refund of the amounts United had been collecting pursuant to the order of the Commission dated January 25, 1954, and later filed, jointly with the City of Tyler, petitions to reject two schedules for further rate increases filed by United subsequent to the January 25, 1954, order of the Commission. The Commission denied the motion and the joint petitions, holding that the Mobile case was not applicable and that Tyler Gas had no rights under its contract, which, by its terms, ran until 1962. The basis of the Commission's decision was (1) that the case could be distinguished from the Mobile case, and (2) that the action of the Circuit Court of Appeals for the Fifth Circuit was res judicata insofar as Tyler Gas was concerned.

The questions presented on this appeal are two: first, is this case distinguishable from the Mobile case; and, second, was the judgment of the Fifth Circuit in the prior litigation res judicata? Our answer to both questions is in the negative.

Respondent's position that this case is distinguishable from Mobile is based on the contention that the United conversion tariff, filed pursuant to Commis-

---

1. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 1956, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373.

sion Order No. 144, was a unilateral change in the contract rates as to Tyler Gas, and that from the time of that change the contract did not bar further unilateral increases in rates. Particular reliance is placed on the fact that the conversion tariff effected some upward change in the cost of natural gas supplied to Tyler Gas by United. From this, respondent argues that Tyler Gas had no binding contractual rights to any rate and that United, by filing with the Commission a higher rate schedule, could unilaterally increase the price of gas to Tyler Gas. This, it is said, makes inapplicable the decision in Mobile that the Natural Gas Act, 15 U.S.C.A. § 717a–717w (in particular, § 4(d) ), confers no power to effect changes in contracts by unilateral action. According to respondent, at the time the rate increases were filed here there was no longer a right to obtain gas at any contract price.

In the Mobile case, United had a contract with Mobile to furnish gas for a certain industrial user at a certain percentage of the sale price paid Mobile by the user. Under Commission Order No. 144, United was directed to and did file a conversion tariff, which the Third Circuit found " * * * *almost* identical with the amount the Mobile percentage rate actually figured." [Emphasis supplied.] Mobile Gas Service Corp. v. Federal Power Commission, 3 Cir., 1954, 215 F.2d 883, 884, affirmed 1956, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373. Mobile acquiesced in the conversion tariff and was thereafter billed at and paid the conversion rate until United applied for an increase in its industrial rates and the Commission ordered the increased rate paid. It was this increased rate, absent a finding that the contract rate was in conflict with the public interest, which the Supreme Court ruled a nullity. This is exactly the case before us.

■ The fact that the conversion tariff acquiesced in by Tyler Gas slightly changed the cost to it, as compared to the original contract percentage rate, cannot distinguish this case from Mobile,[2] for there the converted tariff did not result in cost *identical* to that under the original contract. The Third Circuit, in the Mobile case, regarded the conversion tariff as becoming a part of an unchanged contract. See 215 F.2d at page 891, note 16. This is plainly right. The fact that Tyler Gas inferentially consented to a slightly higher cost of gas in the conversion tariff filed pursuant to Commission Order No. 144 is no basis for saying that it has agreed to be bound by later unilateral rate increases. Tyler Gas has never abandoned its contract; the contract has not been mutually rescinded. So long as Tyler Gas has a valid, subsisting contract with United, the cost of gas cannot be unilaterally varied unless the Commission first finds that the contract rate is in conflict with the public interest. The rules of the Commission itself support the view that modification of a contract does not abrogate it. This is clear from 18 C.F.R. § 154.85 (1949), which reads as follows:

"*Status of contracts filed as rate schedules and restated.*

"Each contract which is now filed as an effective rate schedule, may be continued in effect and shall be considered as an executed service agreement to the extent that the provisions thereof are not superseded by or in conflict with other applicable provisions of the rate schedules and general terms and conditions of the tariff, until such contract expires by its presently provided terms or is replaced by an executed service agreement in a form contained in the tariff: *Provided, however,* That the natural-gas company, concurrent with the filing of the tariff, shall submit, for insertion in front of each such contract, a statement iden-

---

2. There is some disagreement between the parties as to the amount of the higher cost under the conversion tariff. Tyler Gas tells us it was a difference of $2,600.-88, or 1%, while respondent claims the difference was $7,900.00, or 3%. The data to determine which figure, if either, is correct is not before us, even if we were interested in computing the difference.

tifying the provisions thereof which are not superseded by or in conflict with other applicable provisions of the rate schedules and general terms and conditions of the tariff and which are to remain in effect: *Provided further, however,* That agreements intended to effect a change or amendment in such contract may be made only by the execution of a form of service agreement contained in the tariff."

The Supreme Court has decided, in the Mobile case, that the Natural Gas Act does not permit unilateral changes in rate contracts. This is exactly what respondent has permitted to be done here. We can find no sound basis in fact or principle to distinguish this case from Mobile.

For the above reasons, we conclude that the answer to the first question presented in this case must be "No."

## II.

■ There is no occasion for lengthy comment as to our conclusion on the second question before us. A decision dismissing a complaint for lack of jurisdiction cannot be *res judicata* as to the substantive merits of the complaint. Hughes v. United States, 1866, 4 Wall. 232, 71 U.S. 232, 18 L.Ed. 303.

Our view of the decision in Tyler Gas Service Co. v. United Gas Pipe Line Co., supra, is that dismissal of Tyler Gas' complaint was based on a lack of jurisdiction to grant equitable relief as to matters then pending before an administrative agency empowered to regulate natural gas rates, and to afford an adequate remedy. Whatever the purpose of the comments of the Fifth Circuit and the District Court on the merits of the action, we think that both quite properly decided the case on the basis of jurisdiction. The Fifth Circuit regarded the District Court's holding to be " * * * that plaintiffs must, therefore, seek such relief as they may be entitled to under the statute from the commission and not from the court." 217 F.2d at page 76. In its opinion (217 F.2d at page 77), the court stated: " * * * the commission is empowered under and in accordance with the terms of the Act to afford relief and that any relief due the plaintiff must be sought from the commission and under and in accordance with the Act." Later in its decision, the court recites:

"Assuming, without deciding, that the opinion of the majority is right, that of Judge Hastie, the dissenting member, is wrong [in the Mobile case], we think it plain that the opinion does not conflict with, that indeed it supports and confirms, the views of the district judge: that 'Any relief to which plaintiff may be entitled in the premises must be secured through action of the commission and not of this court. The commission is amply empowered to give adequate relief * * *.'"

■ We cannot see how a decision that a party must seek relief before an administrative agency can be *res judicata* of the merits of the agency's later denial of the relief requested.

The order denying the motion of Tyler Gas for refund is reversed. The order denying the petitions to reject the rate schedules filed by United are likewise reversed.

Because of the disposition we make of this case, no other matters briefed or argued need be discussed.