250 F.2d 402
 MEMPHIS LIGHT, GAS AND WATER DIVISION; City of Memphis, Tennessee; and Mississippi Valley Gas Company, Petitioners,
v.
FEDERAL POWER COMMISSION, Respondent,
United Gas Pipe Line Company; Texas Gas Transmission Corporation; and Southern Natural Gas Company, Intervenors.
 No. 13666.
 United States Court of Appeals District of Columbia Circuit.
 Argued September 19, 1957.
 Decided November 21, 1957.
 
 Mr. Reuben Goldberg, Washington, D. C., for all petitioners. Mr. George E. Morrow, Memphis, Tenn., a member of the bar of the Supreme Court of Tennessee, pro hac vice, by special leave of Court, also argued for petitioners Memphis Light, Gas and Water Division and The City of Memphis, Tenn.
 Mr. Robert M. Weston, Atty., Federal Power Commission, with whom Messrs. Willard W. Gatchell, Gen. Counsel, Federal Power Commission, and Howard E. Wahrenbrock, Solicitor, Federal Power Commission, were on the brief, for respondent.
 Mr. Thomas Fletcher, Houston, Tex., with whom Mr. C. Huffman Lewis, Shreveport, La., was on the brief, for intervenor, United Gas Pipe Line Co.
 Mr. Christopher T. Boland, Washington, D. C., with whom Messrs. Richard J. Connor and Thomas F. Brosnan, Washington, D. C., were on the brief, for intervenor, Texas Gas Transmission Corp.
 Mr. William S. Tarver, Washington, D. C., for intervenor, Southern Natural Gas Co.
 Before BAZELON, WASHINGTON and BASTIAN, Circuit Judges.
 WASHINGTON, Circuit Judge.
 
 
 1
 This case concerns the interpretation to be given the Supreme Court's decision in United Gas Pipe Line Co. v. Mobile Gas Service Corp., 1956, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373. The chief question is whether the rule of that case applies where — as here — the controlling supply contracts pledge payment under designated rate schedules "or any effective superseding rate schedules."
 
 I.
 
 2
 Petitioners seek review of an order of the Federal Power Commission denying their motions to reject new rate schedules filed by the intervenor United Gas Pipe Line Company (United). United sought to increase the prices at which it was obligated by contract to sell gas to the intervenors Texas Gas Transmission Corporation (Texas Gas) and Southern Natural Gas Company (Southern Natural), and also to petitioner Mississippi Valley Gas Company (Mississippi). Also denied by the Commission were petitioners' motions to prohibit the new rates from becoming effective and to require appropriate refunds by United.
 
 
 3
 Intervenor United is a "natural-gas company" within the meaning of the Natural Gas Act, 52 Stat. 821, 15 U.S.C. A. § 717a, whose sales are subject to the jurisdiction of the Federal Power Commission. Petitioner Memphis Light, Gas and Water Division is a gas distribution agency of petitioner City of Memphis, Tennessee. The interests of the City of Memphis and of the Division are identical; hereafter both will be referred to jointly as "Memphis." Memphis obtains all of its gas supply from intervenor Texas Gas. The latter, a pipeline company, in turn obtains a substantial part of its supply from United. Petitioner Mississippi is a gas distribution system. It obtains some of its supply by purchase directly from United. It also is supplied by Texas Gas and by Southern Natural. Southern Natural, like Texas Gas, obtains a substantial part of its supply from United.
 
 
 4
 Thus, United has direct seller-buyer relationships with Mississippi, Texas Gas and Southern Natural. United has no such relationship with Memphis, which buys only from Texas Gas. Texas Gas, a customer of United, has sellerbuyer relationships with both Memphis and Mississippi. Southern Natural, also a customer of United, has a seller-buyer relationship with Mississippi only. The supply arrangements between the parties are governed by long-term service agreements (contracts).
 
 
 5
 On September 30, 1955, the Commission accepted United's new schedules for filing under Section 4(d) of the Natural Gas Act, 15 U.S.C.A. § 717c(d). The level of these new rates had not been agreed to by United's contract customers. Acting under Section 4(e), the Federal Power Commission suspended the operation of the new schedule for non-industrial sales and ordered a hearing on the lawfulness of the new schedule. These hearings were held, with Memphis as an intervenor therein, but are not involved in the present review.
 
 
 6
 In February, 1956, while the Section 4(e) hearings were in progress, the Supreme Court announced its decision in United Gas Pipe Line Co. v. Mobile Gas Service Corp., supra, holding that a gas seller could not unilaterally increase its contract rates for gas. Petitioners thereupon filed with the Federal Power Commission motions to prohibit United's new rates from becoming effective on April 1, 1956,[1] to reject those increases, and to order appropriate refunds. Their position was that United's filing was a unilateral attempt to increase rates and that the Federal Power Commission had no jurisdiction to process such an application under Section 4(e), as construed in Mobile. See also Federal Power Commission v. Sierra Pacific Power Co., 1956, 350 U.S. 348, 76 S.Ct. 368, 100 L. Ed. 388. The Commission heard argument and on October 2, 1956, denied the motions in an opinion and order. Rehearing was denied on November 23, 1956. Petitioners now seek review of those orders.
 
 II.
 
 7
 At the outset the Federal Power Commission urges that the orders here under review are interlocutory and not presently subject to our scrutiny. Of the intervenors only United joins in this attack: it urges in addition that petitioners, as strangers to the contracts here involved, are not "aggrieved" under Section 19(b) of the Act, 15 U.S.C.A. § 717r(b).
 
 
 8
 The aggrievement issue is readily answered insofar as petitioner Mississippi is concerned. Mississippi is a party to three of the contracts here involved as a direct customer of United. And United is, in the proceeding here under review, seeking to increase the cost of gas to its direct contract purchaser Mississippi. As to Memphis the situation is somewhat different. Memphis is not a direct customer of United. Rather it purchases from Texas Gas. But the Federal Power Commission has already approved an agreement between Texas Gas and Memphis whereby Texas Gas' customers will reimburse it for any increase in gas cost as a result of the hearings now in progress. Docket No. G-2017, 14 F.P.C. ___ (1955); see F.P.C. orders at 20 Fed.Reg.8088, 8977 (1955). Because of this F.P.C.-approved agreement, Memphis will feel the immediate impact of any increase awarded. This immediate impact is sufficient to give Memphis standing. See City of Pittsburgh v. Federal Power Commission, 1956, 99 U.S.App.D.C. 113, 237 F.2d 741; National Coal Ass'n v. Federal Power Commission, 1951, 89 U.S.App.D.C. 135, 191 F.2d 462. No further action of the Commission is necessary to make operative the increased cost to Memphis. Cf. California Oregon Power Co. v. Federal Power Commission, 1956, 99 U.S.App.D. C. 263, 239 F.2d 426; Cincinnati Gas & Electric Co. v. Federal Power Commission, 1957, 101 U.S.App.D.C. ___, 246 F.2d 688.
 
 
 9
 United's and the Commission's contentions that the orders here under review are interlocutory and that therefore we have no jurisdiction are without merit. Suffice it to say that this case is presented to us in substantially the same posture in which the Mobile case was presented to the Third Circuit and to the Supreme Court. See Mobile Gas Service Corp. v. Federal Power Commission, 3d Cir.1954, 215 F.2d 883, 885, affirmed sub nom. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 1956, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373; see also Tyler Gas Service Co. v. Federal Power Commission, 1957, 101 U.S.App.D.C. ___, 247 F.2d 590.
 
 III.
 
 10
 This case is, in every pertinent aspect save one, a close copy of Mobile. That single aspect is the presence in the contracts here involved of the following provision:[2]
 
 
 11
 "All gas delivered hereunder shall be paid for by Buyer under Seller's Rate Schedule [here is inserted the appropriate rate schedule designation], or any effective superseding rate schedules, on file with the Federal Power Commission. This agreement in all respects shall be subject to the applicable provisions of such rate schedules and to the General Terms and Conditions attached thereto and filed with the Federal Power Commission which are by reference made a part hereof." (Emphasis added.)
 
 
 12
 In Mobile, the Court stated at the outset that —
 
 
 13
 "The question presented in this case is whether under the Natural Gas Act, 52 Stat. 821, 15 U.S.C. § 717 et seq., 15 U.S.C.A. § 717 et seq., a regulated natural gas company furnishing gas to a distributing company under a long-term contract may, without the consent of the distributing company, change the rate specified in the contract simply by filing a new rate schedule with the Federal Power Commission." 350 U.S. at pages 333-334, 76 S.Ct. at page 375.
 
 
 14
 The Supreme Court answered in the negative. In the present case, the question is whether the contract clause quoted above provides the "consent" necessary to give the Federal Power Commission jurisdiction to review under Section 4(e) of the Act United's new schedule filed under Section 4(d).
 
 
 15
 The Commission found that the phrase "any effective superseding rate schedules" did provide the consent required by Mobile and
 
 
 16
 "that it was the understanding and intent of the contracting parties [as expressed in the above-quoted contract clause] to grant United the power to make changes in rates pursuant to section 4(d) of the Natural Gas Act, without waiver, however, of the right of the purchasers to oppose such changes in proceedings before the Commission for the purpose of testing the reasonableness and justness thereof. * * * United's proposal for increased rates in this proceeding does not constitute a prohibited unilateral change of a contract, for the contract language supplies the purchaser's assent to United's filing of a change in rates."
 
 
 17
 In effect, the Commission's position is that the contractual consent to the act of filing is sufficient for Section 4(d). Correct though the Commission's statement of the parties' intent may be, it does not answer the question whether the Commission has jurisdiction to accept such a schedule for filing and to proceed under Section 4(e) to review United's filing of a new rate, where the level of the new rate itself has not been previously agreed upon by the parties to the contract. We know as a fact that not only Mississippi but Texas Gas and Southern Natural as well have not consented to the amount of the new rate, since all three of them are now opposing United's increase before the Commission.
 
 IV.
 
 18
 The Supreme Court's opinion, in describing the relation of Sections 4 and 5, stated clearly that Section 4(d) was merely a requirement that the Federal Power Commission and the public be formally notified of any change made in any contract for the sale of gas by a natural gas company. 350 U.S. at page 339, 76 S.Ct. at page 378. The notice contemplated by Section 4(d) is notice of the fact that the contracting parties have reformed their contract: that the seller has offered, and the buyer has agreed to, a particular new price to be effective no less than thirty days after the Commission is notified of the change. 350 U.S. at pages 339-340, 76 S.Ct. at page 379. It is only at this point — after the parties have negotiated privately a new price term — that the Commission, under Section 4(d) and (e), in any way becomes involved with the rate changing process. Nothing in Section 4(e) gives the Commission authority to assist the parties in negotiating a new price term.
 
 
 19
 Under the rule in Mobile, for the Commission to review rates under the more expeditious procedure of Section 4(e), the seller must bring to the Commission a negotiated agreement. And that agreement to the new rate must be as specific in its terms as was the previous contractual agreement to the rate schedule sought to be superseded. See 18 C.F.R.Pt. 154. If such a new rate schedule has been properly agreed upon and is filed pursuant to Section 4(d), the Federal Power Commission may then under Section 4(e) undertake to review the new rate by ordering a hearing on the "lawfulness" of the new rate filing; and the Commission may suspend temporarily the non-industrial part of the new rate. To the extent that the Federal Power Commission is convinced by the filing company that the new rate is neither unjust nor unreasonable, that new rate may be approved, or a lower rate may be approved, or the new rate may be found unlawful in its entirety and, if necessary, appropriate refunds may be ordered.
 
 To quote Mobile:
 
 20
 "The relationship of these sections [§§ 4, 5] thus affords no support to petitioners' characterization of § 4(d) and (e) as establishing a rate-changing `procedure' — a `proceeding' before the Commission `initiated' by a natural gas company filing a `proposed' change. Section 4 (d) provides not for the filing of `proposals' but for notice to the Commission of any `change * * * made by' a natural gas company, and the change is effected, if at all, not by an order of the Commission but solely by virtue of the natural gas company's own action. If the purported change is one the natural gas company has the power to make, the `change' is completed upon compliance with the notice requirement and the new rate has the same force as any other rate — it can be set aside only upon being found unlawful by the Commission. It is thus no more a `proposed' rate than any other rate, all of which are equally subject to Commission review. Likewise, no `proceeding' is `initiated' by a § 4(d) filing. A proceeding to review the new rate may be initiated under § 4(e), but, if so, it is initiated by the Commission in the same manner as a proceeding under § 5(a) to review any other rate, that is, upon complaint or its own motion." 350 U.S. at page 342, 76 S.Ct. at page 380.
 
 V.
 
 21
 For these reasons, we hold that since United had not obtained the consent of its contract customers to the rate itself — albeit some of those customers may have consented to the act of filing — the Federal Power Commission had no power to file the new rate schedules under Section 4(d) and therefore could not review the new rate pursuant to Section 4(e). It is not sufficient for a Section 4(d) filing that United's customers have consented to allow United to have the Commission invoke Section 4(e) to review a rate increase during the contract term, where the parties have not agreed to the specific rate. Doubtless the contracting parties could have agreed on a third party to arbitrate a dispute when the seller sought to raise its price. But the Federal Power Commission has not been given that arbitration function by statute.
 
 Again to quote Mobile:
 
 22
 "These sections [§§ 4, 5] are simply parts of a single statutory scheme under which all rates are established initially by the natural gas companies, by contract or otherwise, and all rates are subject to being modified by the Commission upon a finding that they are unlawful. The Act merely defines the review powers of the Commission and imposes such duties on natural gas companies as are necessary to effectuate those powers; it purports neither to grant nor to define the initial rate-setting powers of natural gas companies.
 
 
 23
 "The powers of the Commission are defined by §§ 4(e) and 5(a). The basic power of the Commission is that given it by § 5(a) to set aside and modify any rate or contract which it determines, after hearing, to be `unjust, unreasonable, unduly discriminatory, or preferential'. This is neither a `rate-making' nor a `rate-changing' procedure. It is simply the power to review rates and contracts made in the first instance by natural gas companies and, if they are determined to be unlawful, to remedy them. Section 5(a) would of its own force apply to all the rates of a natural gas company, whether long-established or newly changed, but in the latter case the power is further implemented by § 4(e). All that § 4(e) does, however, is to add to this basic power, in the case of a newly changed rate or contract (except `industrial' rates), the further powers (1) to preserve the status quo pending review of the new rate by suspending its operation for a limited period, and (2) thereafter to make its order retroactive, by means of the refund procedure, to the date the change became effective. The scope and purpose of the Commission's review remain the same — to determine whether the rate fixed by the natural gas company is lawful." 350 U.S. at page 341, 76 S.Ct. at page 379.
 
 
 24
 The contracting parties cannot, of course, vest the Federal Power Commission with power not given to that body by Congress.[3]
 
 
 25
 From this discussion it follows that we must reverse and remand this case to the Federal Power Commission for further proceedings not inconsistent with this opinion, and with directions to reject the schedules filed by United and to initiate such proceedings as may be necessary to secure refunds of the incremental amounts paid to United since the time that those schedules were erroneously allowed to become effective.
 
 
 26
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 April 1, 1956, is five months after November 1, 1955. November 1, 1955, is thirty days after the new schedules were filed. See Natural Gas Act § 4 (d) (e), 15 U.S.C.A. § 717c(d) (e)
 
 
 [2]
 There is some dispute among the parties as to whether three of the contracts contain the quoted contract provision. For present purposes we will accept the Commission's representation in its brief that all of the contracts contain the disputed clause or its equivalent
 
 
 [3]
 Judge Bazelon and the present writer, speaking only for ourselves, wish to add that in our view acceptance of the position of the Commission and the intervenors in this case would be to give approval to a ready means of debilitating Section 5(a). That section contemplates,inter alia, that a natural gas company, claiming that its rates are too low, may seek to have the Federal Power Commission hold a hearing to review its present rates. In that hearing, a record must be made on which the Commission can decide whether the present rates are "unjust, unreasonable, unduly discriminatory, or preferential." And if the rates, after hearing, are found to be too low the Commission may order the rates increased to a lawful level. Respondent and intervenors would have us hold that the natural gas company seeking an increase could avoid that statutory scheme by securing its customer's consent merely to the act of filing, and with such consent be entitled to Commission review under Section 4(e). By using the Section 4(e) procedures the company could get its rates into effect quickly and would avoid both the delay and the more stringent proof requirements of Section 5(a). In the Section 4(e) hearing, according to respondent and intervenors, the filing party would merely be required to show that the new rate — a rate to which, by hypothesis, its customers had not consented — is one which is not unlawful, i. e., that it is a rate within a zone of reasonableness, Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 1951, 341 U.S. 246, 251, 71 S.Ct. 692, 95 L.Ed. 912; Sierra Pacific Power Co. v. Federal Power Commission, 1955, 96 U.S.App.D.C. 140, 142, 223 F.2d 605, 607, without reference to the lawfulness or adequacy of the old rate. In a Section 5(a) hearing, however, a record would have to be made showing not only that the new rate was lawful, but that the old rate was "unjust, unreasonable, unduly discriminatory, or preferential." And under Section 5(a) if the new, non-consented rate, or any part of it, were approved, it would not become effective until after the hearing was concluded and the increase ordered formally by the Commission. The company awarded the increase would, in addition, have to file under Section 4(d) a new schedule reflecting the rate awarded.