**UNITED GAS PIPE LINE COMPANY,
Plaintiff,**

v.

**TYLER GAS SERVICE COMPANY,
Defendant.**

**Civ. No. 2153.**

United States District Court
E. D. Texas,
Tyler Division.
May 19, 1958.

Vinson, Elkins, Weems & Searls, Thomas Fletcher, James W. McCartney, Jarrel D. McDaniel, Houston, Tex., for plaintiff. ·

Bryce Rea, Jr., Washington, D. C., Ramey, Calhoun, Brelsford, Hull & Flock, Thos. B. Ramey, Tyler, Tex., for defendant.

ESTES, District Judge.

This is the final engagement in the "ceaseless struggle" referred to by the Circuit Court of Appeals in its opinion in United Gas Pipe Line Company v. Tyler Gas Service Company, 5 Cir., 247 F.2d 681. Reference is made to that opinion, and to the opinion of the Court of Appeals, District of Columbia Circuit in Tyler Gas Service Company v. Federal Power Commission, 101 U.S.App.D.C. 184, 247 F.2d 590 for the background of the present controversy, which relates only to the matter of the amount of interest, if any, to which United is entitled. Defendant having refused to pay for gas sold it by plaintiff after February 1, 1956, at more than the contract rate, plaintiff, claiming a higher rate based on schedules filed with the Federal Power Commission, and having refused defendant's tenders of payment at the contract rate, filed this suit on October 16, 1956, "an ordinary run of the mill simple claim for money judgment", for the aggregate amount claimed by it to be due for gas furnished to the defendant to and including August, 1956, and such further sums as should become due thereafter up to the time of trial, with interest at 6 per cent. On motion of the defendant, pending procedure for review of the decision of the Federal Power Commission holding the filed and not the contract rates to be effective, trial of the instant suit was stayed by order dated March 5, 1957, by the late Honorable Lamar Cecil, District Judge of the Eastern District of Texas.

Plaintiff moved to set aside this stay order, its objection to the stay being that it was left without any security for ultimate payment by defendant. The plaintiff's motion was denied, but the order denying it contained the following additional order, which I view as a condition, accepted by the defendant, of the refusal to set aside the stay:

"It is further Ordered that for the purpose of securing satisfaction of any judgment which may be rendered against the defendant in this cause, that within fifteen (15) days from this day defendant, deposit in escrow in the Peoples National Bank of Tyler, in cash or United States Government Securities the aggregate sum of $709,370.71, same being the amount of the billings for gas sold by plaintiff to defendant from February 1, 1956, through the month of January, 1957, and that defendant shall hereafter deposit in escrow in said Bank the amount of the monthly billings for gas sold by plaintiff to defendant within the specified payment period for such billings, and continue so to do until directed otherwise by the Court.

"It is further Ordered that all such cash deposited in escrow shall be promptly invested by said Bank in United States Government securities and said Bank shall collect the interest accruing on said securities and hold same together with said securities, subject to the further order of this Court."

Defendant complied with the order and made the deposits provided for in it covering gas furnished for the months of February, 1956, to October, 1957, inclusive, at the filed rates claimed by the plaintiff. The aggregate amount so deposited was $1,256,925.79. For that period the amount due at the contract rates was $624,821.50, the balance of $632,104.29 being the excess of the filed rates over the contract rates. The entire amount is still held by said bank in the form of money or securities, together with interest, which has been earned on the fund and which is alleged to have amounted to $29,540.63 up to December 15, 1957.

The proceedings for review of the Federal Power Commission's order upholding the scheduled rates terminated favorably to defendant (Tyler Gas Service Company v. Federal Power Commission, 101 U.S.App.D.C. 184, 247 F.2d 590, certiorari denied by the Supreme Court on December 9, 1957, 355 U.S. 895, 78 S.Ct. 263, 2 L.Ed.2d 193). There is no controversy but that plaintiff is entitled to $624,821.50 for the period from February, 1956, to October, 1957, inclusive. The controversy relates to its claim for interest, and particularly to the proper disposition of the interest earned by the fund in the hands of the bank.

The matter is brought up by plaintiff's motion filed February 12, 1958. Plaintiff's motion asserts that it is entitled to that proportion of the interest earned which the amount it is entitled to for gas at the contract rates bears to the total deposits; alleges that defendant denies this and claims to be entitled to all of the interest earned, and contends that if it be not entitled to any of the earned interest plaintiff is entitled to interest at 6 per cent from the due date of each monthly billing. Plaintiff's motion also alleges that both before and subsequent to the order of March 5, 1957, defendant had tendered to plaintiff a check each month representing the amount due at the contract rates, which tenders were refused because the rules of the Federal Power Commission required it to collect the filed rates. Plaintiff's motion also alleges that "(b) Defendant asserted that such tenders relieved it of the duty of paying obligatory interest upon the amount so tendered, (c) Plaintiff agreed with this position, understanding that so much of the moneys deposited in the bank account as equalled the moneys due at the contract rate were recognized to belong to plaintiff."

The quoted clauses do not amount to an allegation of an express agreement by defendant with plaintiff that a part of the amounts deposited and to be de-

posited should be the property of the plaintiff. Defendant in its reply relies upon its tenders themselves as relieving it from interest, and not upon any claimed agreement by plaintiff that such tenders were to be deemed sufficient to do so. Plaintiff did not accept the stay order, even with the condition annexed to it, but sought, unsuccessfully, by mandamus, to require the judge to proceed to trial. United Gas Pipe Line Company v. Tyler Gas Service Co., 5 Cir., 247 F.2d 681. There is no issue of fact here as to an agreement between the parties respecting the matters now in controversy.

Defendant's reply filed February 24, 1958, to plaintiff's motion filed February 12, 1958, is based upon the propositions (1) that by its tenders it was relieved of any obligation to pay "obligatory interest to plaintiff on the amount so tendered" and (2) that the deposits made in the bank and the securities into which they were converted at all times constituted the property of the defendant, having been deposited merely to provide security for the satisfaction of any judgment which might be obtained against it, and that therefore defendant as owner of the fund is entitled to all of the interest earned on it. It alleges that the amount due by it for gas at the contract rate for the period from February, 1956, to October, 1957, inclusive, has been recalculated by both parties and determined to be $624,821.50 instead of the slightly smaller amount stated in plaintiff's motion, and states that it tenders that amount in full payment and satisfaction.

Plaintiff's suit only involved amounts claimed to be due for gas furnished from February, 1956, to October, 1957, inclusive. However, prior to February 1, 1956, plaintiff had furnished gas for a number of years for which it had billed and had been paid at the filed rates, resulting in an excess payment of upwards of $350,000. Defendant's answer, filed February 15, 1958, includes a counterclaim for the amount of this excess. Plaintiff's motion admits the excess in the amount of $359,618.81; admits the obligation to pay interest at 6 per cent

and alleges that it has tendered the above amount plus interest through February 6, 1958, the total being $423,647.46, which tender was refused by the defendant "for the stated purpose of checking the computations." This aggregate amount of principal and interest is stated by defendant in its reply to have been recalculated by the parties and agreed to be $423,314.69, which it admits was tendered by plaintiff to defendant. The reply asserts that "defendant is willing to accept such tender in satisfaction of the judgment which may be entered herein upon its aforesaid counter claim." Plaintiff's memorandum, in support of its motion, states that it tendered its check to defendant on February 7, 1958, for this item. The tender appears to have been unconditional, and it stopped the running of interest on this item as of the date of the tender.

Plaintiff's motion proposes that the case be disposed of by an order directing the bank to make appropriate disbursements of the fund in its possession and that thereupon the case be dismissed with prejudice at plaintiff's costs. Defendant's reply asks that final judgment be entered in favor of plaintiff for $624,821.50 without interest; that defendant recover on its counterclaim the sum of $423,314.69, principal and interest; and that the bank be directed to deliver to defendant all of the funds and property in its hands.

As I see it, the termination of this controversy will follow from the determination of two questions, viz.:

(1) Who is entitled to the interest earned on the funds while in the hands of the bank? and

(2) Did the tenders made by defendant to plaintiff at the contract rates for gas furnished after February 1, 1956, relieve it from the obligation to pay interest at the legal rate, and, if not, what effect did the deposits in the bank pursuant to the court's order have on such obligation?

As to the first question, I agree with the assertion by plaintiff in its brief

that the right to interest on such a deposit follows the ownership of the fund. The question therefore is, who owned the fund?

The deposits were made pursuant to the court's order hereinabove quoted. It appears that such order was made to meet the objection of plaintiff that if the case were stayed without any security to it, it might be unable to collect an ultimate judgment. The order itself states that it is "for the purpose of securing satisfaction of any judgment which may be rendered against the defendant in this cause." This case is dissimilar to interpleader cases, and cases, e. g. specific performance suits, where money is paid into the court expressly as a tender to the other party. In such cases the court's judgment determines the very ownership of the funds deposited. In the present case, a simple action for debt, the court's order contemplates an eventual money judgment in some amount against the defendant, the deposit being only to assure the payment of such judgment. Defendant's tenders, both before and after the order of March 5, 1957, at the contract rates were refused by plaintiff, however justifiably, and plaintiff is not in a position to claim ownership of a part of the deposited funds by reason of such tenders. I agree with the contention of the defendant that the ownership of this fund remains in it, subject to such orders of the court with reference to it as may be required to assure the payment of the eventual judgment, and that since the interest earned on the fund follows its ownership, all of that interest should be treated as belonging to the defendant.

This brings me to the second question, as to the effect of defendant's tenders, which is relevant to plaintiff's alternate contention that if it is not entitled to share in the interest earned on the deposited funds by reason of its claimed ownership, it is entitled to interest at the legal rate "from the due date of each month's billing". These tenders were in each case accompanied by a letter wherewith defendant submitted its check for amounts calculated at the contract rates (which have now been determined to have been the correct rates) for gas received during the preceding month. In these letters defendant insisted that the higher filed rates were unilateral and void and that the only legal rates were the contract rates. The first tendered check, covering February, 1956, was accompanied by such a letter, and was returned by plaintiff with its letter asserting that the filed rates were the correct rates, that "the notations on the face of the check make it perfectly clear that you intend this check in full payment of all amounts due United Gas Pipe Line Company," and that plaintiff could not accept such check under the rules and regulations of the Federal Power Commission, and in view of its order sustaining the filed rates. When defendant tendered its check for the March gas at the contract rates, it retendered its check covering the February gas, both of which checks were again returned for the same reason. In retendering the check for the February gas, and in tendering its check for the March gas, defendant did not deny that the checks were tendered as full payment of all amounts due.

■ I conclude that the tenders made by defendant at the contract rates were expressly intended to be in full payment and conditioned upon their acceptance as such, and that their acceptance by the plaintiff would have been in violation of the Federal Power Commission's Regulation had its order upholding the scheduled rates not eventually been reversed, and would have at least seriously impeded plaintiff in collecting, in the same event, the difference between the contract rates and the scheduled rates. Despite the Mobile case (United Gas Pipe Line Company v. Mobile, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373, decided February 27, 1956) plaintiff contended that it was distinguishable, and moreover that the decision in Tyler Gas Service Co. v. United Gas Pipe Line Co., 5 Cir., 217 F.2d 73, was res judicata against defendant. These contentions were upheld by the Commission, and although they were eventually resolved against the plaintiff

by the District of Columbia Court of Appeals, I see no reason to doubt the good faith of the plaintiff in claiming that the filed rates were effective.

■ It is a general rule of law that a tender is ineffectual as such where it is coupled with a condition that it be accepted in full payment, if the creditor in good faith claims that a larger amount is due, notwithstanding that it is ultimately held that the amount tendered was the correct amount. The rule is stated in 52 Am.Jur. 232 as follows:

"But tender of an amount less than the creditor claims is due him is not effectual where coupled with conditions which render its acceptance by the creditor an admission that no greater amount is due. This rule applies as well where the tender is in fact of an amount in full of all claims as where it is not; whether or not the amount of money tendered is in full is a question that the creditor has the right to contest in every case."

and is supported by the following authorities, among others: Bohler v. Calloway, 267 U.S. 479, 45 S.Ct. 431, 69 L.Ed. 745; Davidge v. Simmons, 49 App.D.C. 398, 266 F. 1018; Carey Lbr. Co. v. Hetherington, D.C.W.D.Okl., 107 F.Supp. 995; First Nat. Bank of Davis v. Britton, 185 Okl. 566, 94 P.2d 896; Orr v. Mallon, 190 Okl. 598, 126 P.2d 83; Pleasant v. Arizona Storage & Distributing Co., 34 Ariz. 68, 267 P. 794; Miller v. Merritt, 233 Iowa 230, 8 N.W.2d 726; Rhea v. Brewster, 130 Iowa 729, 107 N.W. 940; Smith v. School District, 89 Kan. 225, 131 P. 557, Ann.Cas.1914D, 139; Moore v. Norman, 52 Minn. 83, 53 N.W. 809, 18 L.R.A. 359; Warren v. Banning, 140 N.Y. 227, 35 N.E. 428; 86 C.J.S. Tender § 32 a, pp. 573–574.

The Texas courts follow the general rule that "a tender accompanied with conditions which the debtor has no right to impose is without effect" (40 Tex. Jur. 851–2); and it is my opinion that Texas courts would apply these principles in the circumstances here presented.

Accordingly, it is my view that the tenders made by the defendant did not as a matter of law relieve it from the payment of interest at the legal rate.

■ However, after plaintiff procured an order requiring defendant to deposit the funds in court, thereby depriving defendant of the use of the money, it could not "equitably charge the defendant with a greater sum for interest than the money has earned." Warren v. Banning, 140 N.Y. 227, 35 N.E. 428.

Therefore, I think that from and after the date of the order, plaintiff is entitled to no more by way of interest than that portion of the interest earned which the aggregate amount to which it was entitled at the contract rates bears to the aggregate of the amounts deposited.

This appears from the prayer in plaintiff's motion to be all it seeks by way of interest; and to this much I think it is entitled.

In view of my conclusion that the funds deposited were only as security for the payment of whatever final judgment might be rendered, it is my opinion that, absent an agreement by the parties to follow plaintiff's proposed procedure, final judgment should be rendered in this case in favor of the plaintiff for the sum of $624,821.50 plus 624,821.50/1,256,925.-79 of the interest earned by the fund, and for the defendant on its counterclaim in the amount of $423,314.69; and that the funds in the hands of the bank should be disposed of by turning over to the plaintiff in satisfaction of both the above judgments the difference between the award to the plaintiff and that to the defendant on its counterclaim, that the balance of such funds be turned over to the defendant, that no execution issue, and that costs be adjudged against the plaintiff. With conviction that this disposition will "Render unto" United the things which are United's, and unto Tyler the things which are Tyler's, and that Judge Cecil would have reached this result, the Court exercises the discretion it possesses in matters relating to interest and funds deposited in court in sup-

port of this decision. See Okeechobee County, Florida v. Nuveen, 5 Cir., 145 F.2d 684, 687, and Jacobs' Claim v. Adams, 1781, 1 Dall. 52, 1 L.Ed. 33, both referred to in Natural Gas Pipeline Co. of America v. Harrington, 5 Cir., 246 F.2d 915, at page 921; also 20–B Tex. Jur. pp. 5–7.

This memorandum opinion will constitute the findings of fact and conclusions of law herein as authorized by Rule 52, Fed.Rules Civ.Proc., 28 U.S.C.A. Counsel will submit a judgment in accordance with this opinion for entry.