267 F.2d 405
 NEVADA NATURAL GAS PIPE LINE CO., Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent.
PACIFIC GAS & ELECTRIC COMPANY, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent.
SOUTHERN CALIFORNIA GAS COMPANY and Southern Counties Gas Company of California, Petitioners,
v.
FEDERAL POWER COMMISSION, Respondent.
PEOPLE of the STATE OF CALIFORNIA and Public Utilities Commission of the State of California, Petitioners,
v.
FEDERAL POWER COMMISSION, Respondent.
STATE OF CALIFORNIA, By Its Attorney General, Edmund G. BROWN, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent.
 No. 17074.
 No. 17228.
 No. 17229.
 No. 17201.
 No. 17215.
 United States Court of Appeals Fifth Circuit.
 May 27, 1959.
 
 Charles H. McCrea, Las Vegas, Nev., W. M. Laub, Ezekiel G. Stoddard, Washington, D. C., for petitioner Nevada Natural Gas Pipe Line Co.
 F. T. Searls, Malcolm H. Furbush, San Francisco, Cal., for petitioner Pacific Gas & Elec. Co.
 L. T. Rice, Henry F. Lippitt, II, Los Angeles, Cal., T. J. Reynolds, H. P. Letton, Jr., Los Angeles, Cal., for petitioner Southern California Gas Co.
 Milford Springer, Robert M. Olson, Jr., Los Angeles, Cal., for petitioner Southern Counties Gas Co. of California.
 Franklin G. Campbell, Everett C. McKeage, San Francisco, Cal., Roderick B. Cassidy, Asst. Chief Counsel, Harold J. McCarthy, Principal Counsel, San Francisco, Cal., for petitioner People of the State of Cal. and Public Utilities Commission of the State.
 Edmund G. Brown, Atty. Gen., William M. Bennett, Deputy Atty. Gen., San Francisco, Cal., for petitioner, State of California.
 William W. Ross, Atty., F.P.C., Willard W. Gatchell, General Counsel, F. P.C., Howard E. Wahrenbrock, So. Counsel, F.P.C., Washington, D. C., for respondent.
 Gregory A. Harrison, Brobeck, Phleger & Harrison, Malcolm T. Dungan, San Francisco, Cal., George D. Horning, Jr., Washington, D. C., Allen R. Grambling, El Paso, Tex., Boris H. Lakusta, San Francisco, Cal., Henry F. Lippitt, II, Los Angeles, Cal., Graham, James & Rolph, San Francisco, Cal., for intervenors.
 Before JONES, BROWN and WISDOM, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 El Paso Natural Gas Company (El Paso Gas) is a natural gas company within the meaning of the Natural Gas Act, 15 U.S.C.A. § 717 et seq. It gathers, transports and sells natural gas in interstate commerce to the petitioners, Nevada Natural Gas Company (Nevada Gas), Pacific Gas and Electric Company (P. G. & E.), Southern California Gas Company (Southern California Gas) and Southern Counties Gas Company of California (Southern Counties Gas). Pursuant to the provisions of Order No. 144 of the Federal Power Commission,[1] El Paso Gas filed its Gas Rate Schedules with the Federal Power Commission and entered into service agreements with its customers. In April 1955, El Paso Gas and Nevada Gas made a service agreement which provided:
 
 
 2
 "Buyer shall pay seller for natural gas purchased and for services rendered hereunder in accordance with Seller's Rate Schedule A-1-X on file with and subject to the jurisdiction of the Federal Power Commission and lawfully in effect from time to time. The rates contained in aforesaid rate schedule on file with said Commission and in effect at the time of commencement of service hereunder shall be the rates to be paid by Buyer to Seller under this agreement until the same are changed in accordance with lawful requirements. This agreement in all respects is subject to the provisions of the above rate schedule and to the applicable provisions of the General Terms and Conditions attached to the rate schedules filed by Seller with the Federal Power Commission, all of which are by reference made a part hereof."
 
 
 3
 There were service agreements between El Paso Gas and P. G. & E., Southern California Gas and Southern Counties Gas, made in December, 1955, with the same terms except that reference was made to Rate Schedules G and G-X rather than to Rate Schedule A-1-X as in the Nevada Gas contract.
 
 
 4
 On February 27, 1956, the Supreme Court announced its decision in United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373. In that case it was held that a seller could not escape a contract obligation to furnish a buyer with natural gas at a specified price for a term of years by unilaterally filing an increased rate schedule under § 4(d) of the Natural Gas Act. In August of 1957 El Paso Gas made new service agreements with P. G. & E., Southern California Gas and Southern Counties Gas. The price and rate schedule article of these contracts is as follows:
 
 
 5
 "Buyer shall pay Seller for natural gas purchased and for services rendered hereunder in accordance with Seller's Rate Schedules G and G-X on file with and subject to the jurisdiction of the Federal Power Commission and lawfully in effect from time to time. The rates contained in such Rate Schedules on file with said Commission and in effect at the time of commencement of service hereunder shall be the initial rates to be paid by Buyer to Seller under this Agreement and shall continue until the same are changed in accordance with lawful requirements. It is agreed by and between the parties hereto that for any reason whatsoever and at any time either party may file with or apply to the Federal Power Commission under any applicable provision of law, including, without limitation, the provisions of the Natural Gas Act, specifically Sections 4 and 5 thereof, or to any other body or court having jurisdiction, for an increase or decrease in the rates for gas sold and services rendered hereunder, and each party hereby consents to the making of any such filing or application by the other; it being understood, however, that neither party waives any right to contest the level of such rates or basis upon which such rates shall be fixed by the Federal Power Commission or other body or court having jurisdiction.
 
 
 6
 "This agreement, in all respects, is subject to the provisions of Rate Schedules G and G-X and applicable provisions of the General Terms and Conditions attached to the Rate Schedules filed by Seller with the Federal Power Commission, all of which are by reference made a part hereof."
 
 
 7
 An agreement in like terms was made between El Paso Gas and Nevada Gas. On June 28, 1957, El Paso Gas filed with the Commission revised Rate Schedules A-1-X, G, and G-X for the purpose of increasing the rates to be charged to Nevada Gas, P. G. & E., Southern California Gas and Southern Counties Gas. The Commission, exercising jurisdiction under Sections 4(d) and 4(e) of the Natural Gas Act,[2] set the revised rate schedule for hearing and suspended the rates. The petitioners here intervened in the proceedings before the Commission[3] urging that, in view of Mobile and the decision of the District of Columbia Court of Appeals in Memphis Light, Gas and Water Division v. Federal Power Commission, 102 U.S. App.D.C. 77, 250 F.2d 402, decided November 21, 1957, the acceptance of the increased rates for filing should be rescinded. On December 31, 1957, the Commission ordered that the proposed rates would be effective as of January 1, 1958, upon the giving by El Paso of security to make refunds if the increased rates were subsequently determined to be unjustified. The Commission subsequently declined to reject the revised schedules. These petitions for review followed.
 
 
 8
 A comparison of dates will show that the agreements of El Paso Gas with the California Companies of August 1957 were not in effect when the increased rate schedules were filed. It has been suggested that the August 1957 agreements should not be considered in reaching our decision. Being of the opinion that the result would be the same under these or the earlier agreements, we give no consideration to this matter.
 
 
 9
 The question before us is whether the Commission should have rejected the filing of the increased rate schedules of El Paso Gas as being an unlawful attempt to make a unilateral increase in rates for natural gas supplied under contracts which fixed prices. However doubtful the question may have been under the decision of the Supreme Court in Mobile, and however persuasive for the petitioners' contention the Circuit Court's opinion in Memphis may have been, we think the question is resolved by the Supreme Court's pronouncement in the Memphis case. United Gas Pipe Line Co. v. Memphis Light, Gas and Water Division, 358 U.S. 103, 79 S.Ct. 194, 196, 3 L.Ed.2d 153, rehearing denied 358 U.S. 942, 79 S.Ct. 344, 3 L. Ed.2d 350. In that case the clause relating to pricing read:
 
 
 10
 "All gas delivered hereunder shall be paid for by Buyer under Seller's Rate Schedule (the appropriate rate schedule designation is inserted here), or any effective superseding rate schedules on file with the Federal Power Commission. This agreement in all respects shall be subject to the applicable provisions of such rate schedules and to the General Terms and Conditions attached thereto and filed with the Federal Power Commission which are by reference made a part hereof."
 
 
 11
 Construing the contracts so providing and others with similar provisions, the Court held that the Natural Gas Act did not preclude the pipe line company from changing its rates by filing new rate schedules under Section 4(d) of the Act, subject to review by the Commission under Section 4(e). In the course of its opinion the Court said:
 
 
 12
 "The Act comes into play as to rate changes only in (1) imposing upon the seller the procedural requirement of filing timely notice of change, (2) giving the Commission authority to review such changes, and (3) authorizing the Commission, in the case of rates for sales of gas for other than exclusively industrial use, to suspend the new rates for a five-month period and thereafter to require the posting of a refund bond pending a determination of the lawfulness of the rates as changed.
 
 
 13
 "It seems plain that Congress, in so drafting the statute, was not only expressing its conviction that the public interest requires the protection of consumers from excessive prices for natural gas, but was also manifesting its concern for the legitimate interests of natural gas companies in whose financial stability the gas-consuming public has a vital stake. Business reality demands that natural gas companies should not be precluded by law from increasing the prices of their product whenever that is the economically necessary means of keeping the intake and outgo of their revenues in proper balance; otherwise procurement of the vast sums necessary for the maintenance and expansion of their systems through equity and debt financing would become most difficult, if not impossible. This concern was surely a proper one for Congress to take into account in framing its regulatory scheme for the natural gas industry, cf. Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 603, 64 S. Ct. 281, 88 L.Ed. 333, and we think that it did so not only by preserving the `integrity' of private contractual arrangements for the supply of natural gas, 350 U.S. at page 344, 76 S.Ct. at page 380 (subject of course to any overriding authority of the Commission), but also by providing in § 4 for the earliest effectuation of contractually authorized or otherwise permissible rate changes consistent with appropriate Commission review.
 
 
 14
 "What has been said disposes of the question whether anything in the Natural Gas Act forbids a seller to change its rates pursuant to § 4 procedures simply because its customers have not agreed to the amount of the rate as changed. There remains the question whether United's service agreements reserved to it the power to make rate changes in this manner." 358 U.S. 103, 113-114, 79 S.Ct. 194, 200.
 
 
 15
 The agreements before us, like those in the Memphis case, are typical of the "tariff-and-service arrangements" contemplated by the Commission's Order No. 144. The 1955 agreements between El Paso Gas and its customers clearly disclose an intention that rates might be changed in accordance with Section 4(d) and 4(e) procedures. Under the rule in the Memphis opinion such provisions are valid and do not violate either the letter or spirit of the Natural Gas Act.
 
 
 16
 The Commission's acts in receiving the revised rate schedules and in processing them under the Section 4(d) and (e) procedures were proper. Its orders which are before us on petitions for review are
 
 
 17
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 "When the Natural Gas Act became law in 1938, natural gas companies were permitted to file their existing sales contracts as rate schedules under § 4(c). Schedules in this form were extremely lengthy, unwieldy, and otherwise unsatisfactory in that it was most difficult for customers, competitors, and the Commission itself to ascertain whether rates to various customers were unduly discriminatory or otherwise unreasonable. The Commission therefore proposed regulations requiring the conversion of rate contracts into a `tariff-and-service-agreement' system, and these regulations were promulgated in October 1948 as Order No. 144. [18 C.F.R. § 154.1 et seq.] Under the tariff-and-service-agreement system, the agreement between buyer and seller does not itself contain a price term, but rather refers to rate schedules of general applicability on file with the Commission. It is noteworthy that Order No. 144 expressly contemplates that a seller may reserve the `privilege' of filing rate changes under § 4 of the Act, 18 CFR § 154.38(d) (3)." United Gas Pipe Line Co. v. Memphis Light, Gas and Water Division, 358 U.S. 103, 115, 79 S.Ct. 194, 201, 3 L.Ed.2d 153, rehearing denied 358 U.S. 942, 79 S.Ct. 344, 3 L.Ed.2d 350
 
 
 [2]
 "(d) Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published. [15 U.S. C.A. § 717c(d).]
 "(e) Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, or State commission, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect: Provided, That the Commission shall not have authority to suspend the rate, charge, classification, or service for the sale of natural gas for resale for industrial use only; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission, to keep accurate accounts in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the natural-gas company, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible." 15 U.S.C.A. § 717c (e).
 
 
 [3]
 Nevada Gas apparently did not formally intervene in the proceedings but the Commission permitted it to participate and does not urge the point now