**TYLER GAS SERVICE COMPANY and the City of Tyler, Texas, Appellants,**

v.

**UNITED GAS PIPE LINE COMPANY, Appellee.**

**No. 15034.**

United States Court of Appeals
Fifth Circuit.

Nov. 24, 1954.

Troy Smith, Thos. B. Ramey, Tyler, Tex., Bryce Rea, Jr., Washington, D. C., Ted Chilcote, Tyler, Tex., Ramey, Calhoun, Brelsford & Hull, Tyler, Tex., of counsel, for appellants.

Thomas Fletcher and James W. McCartney, Houston, Tex., Vinson, Elkins, Weems & Searls, Houston, Tex., of counsel, for appellee United Gas Pipe Line Co.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

Alleging that United Gas Pipe Line Company, a "Natural Gas Company", was under binding term contracts as to rates with the City of Tyler and the Tyler Gas Service Company, the operators of a system for the local distribution and sale of gas and the holder of a gas franchise from the city, and that, in violation of their express covenants, it had filed with the Federal Power Commission and was proposing, at the end of the suspension period, to put into effect a schedule of higher rates, Tyler and Tyler Gas filed this suit seeking: (1) a preliminary injunction to restrain United from putting the schedule into effect; (2) a judgment declaring the contracts to be in all things valid, subsisting, and enforcible; and (3) enjoining the defendant from proposing or making effective any rates and charges in excess thereof.

The defendant moved for a dismissal of the complaint for want of jurisdiction and for want of equity and failure to state a claim because it in effect seeks to enjoin compliance by the defendant with the provisions of the Natural Gas Act,[1] and more particularly Section 4 thereof,[2] and because it in effect bases its claim to declaratory and injunctive relief upon the theory and contention that the contracts relied on override and nullify the

1. 15 U.S.C.A., Chapt. 15B, Sec. 717 to 717w.

2. "Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published." 15 U.S.C.A. § 717c(d).

duties, powers, obligations and procedures imposed and conferred by the act on defendant as a natural gas company under the Act, indeed override the provisions of the Act itself. In addition, it moved for a dismissal as to the City of Tyler for the reason that the city was not a party to the contracts and had no capacity to sue on or in respect of them, and filed a lengthy answer, which, because of the manner in which the case went off, it is not necessary to here set out.

The matter thereafter coming on for hearing on the application for preliminary injunction, the district judge filed a carefully worded opinion in which, summing up the facts,[3] as to which there

3. "The facts, which are largely without dispute, arise in the following fashion. The original contract between United and Tyler Gas was dated November 22, 1940, and provided for a price to Tyler Gas of 22½¢ per thousand cubic feet for gas to be resold for domestic use, and for gas for resale by Tyler Gas to industrial consumers of 80% of the proceeds received by Tyler Gas from such sales. These were the rates paid from 1940 to 1946. In 1946, the franchise which had been granted to Tyler Gas by City expired. At that time, natural gas was in abundant supply in the vicinity of the City of Tyler by reason of the proximity of a number of producing fields. As the expiration of Tyler Gas's franchise neared, a group of citizens approached the City Commission with the proposal that the franchise of Tyler Gas be not renewed; that a new distributing company be organized, which would procure its gas from new sources, at a price less than Tyler Gas paid United and that greatly reduced rates thus might be made available to the consumers. The City Commission was quite receptive to this suggestion and for a period of several months had it under serious consideration. Tyler Gas, of course, desired to have its franchise renewed, and United was anxious to retain this market for its product. After considerable haggling over price, and being fully conversant with these facts, United consented to reduce its price to Tyler Gas of gas for domestic consumption from 22½¢ to 12¢ Mcf if City would renew the Tyler Gas franchise. A proposed new franchise for Tyler Gas was prepared, specifying the rates it would charge its consumers. These proposed rates were predicated on a rate of 12¢ from United to Tyler Gas for domestic gas and 80% of the amount received by Tyler Gas, though in no event less than 7.2¢ for industrial gas. The franchise provided further that under certain contingencies the City might take over and acquire the property and distributing system of Tyler Gas. In an abundance of caution and before approving such franchise, bottomed as it was on the proposed reduction in rates from United to Tyler Gas, the City Council requested of United that United commit itself in writing to such proposal. Pursuant thereto, on April 3, 1946, United addressed a letter to City wherein United agreed to the proposed rates to be charged Tyler Gas; agreed that such rates would be the maximum rates which United would charge Tyler Gas for a period of sixteen years (subject only to increase in the event of imposition of certain taxes, not material here); and agreed that in the event City exercised its right to acquire the properties of Tyler Gas, then United would thereafter sell to City on the same basis and pursuant to the same contractual provisions. In reliance thereon, the proponents of the new and competing company withdrew the application for franchise, the City renewed the franchise of Tyler Gas for a period approximating the life of the contract, and the original contract of 1940 between United and Tyler Gas was amended, whereby the new rates were fixed at the agreed figures.

"During all of this time, United was subject to the jurisdiction of the Federal Power Commission under the terms of the Natural Gas Act. Pursuant thereto and in compliance with the rules and practices of the Commission, the amendment to the contract was filed with the Commission. That body permitted such filing and ordered such rates to become effective. By virtue thereof, these contract rates were charged and collected from 1946 until July 1, 1952.

"About July 1, 1952, United filed with the Commission a schedule of rates (not those now in issue) which modified slightly the contract rates which theretofore had been in effect. By the conversion tariff [so called because it converted United's schedule of rates from contract to tariff form as required by rules of the Commission], United requested a reduction from 12¢ to 11.2¢ per Mcf for domestic gas sold to Tyler Gas and an increase from 7.2¢ to 7.5¢ per Mcf for industrial gas.

"Tyler Gas did not consent to this change, and protested to the Commission.

is no serious dispute, and discussing the applicable law, he held: that federal jurisdiction existed by reason of diversity and jurisdictional amount; that United is a natural gas company subject to the act; that being such it cannot by private contract fix binding long term future rates; and that plaintiffs must, therefore, seek such relief as they may be entitled to under the statute from the commission and not from the court.

So holding, he denied the preliminary injunction and dismissed the bill for want of equity, and plaintiffs have appealed.

Here, while conceding that the commission on final hearing may fix reasonable rates higher than the contract fixes

them, appellants insist: that unless and until the contracts sued on are set aside for some invalidity, or after a hearing before the Federal Power Commission, the contract rates are found by the commission to be unreasonable and are set aside, the contract and the rates they fix are controlling upon the parties to them; and that they may not be rendered null and ineffective by the unilateral action of United in filing with the Federal Power Commission a new schedule with higher rates.

In support of their views, that this cannot be done and that the court erred in denying the preliminary injunction and dismissing the complaint for want of equity, appellants, in eight specifications of error,[4] which ring the changes on

In its protest, it stressed the same facts relied on here, namely, that the increase would constitute a violation of the terms of the existing contract, and that Tyler Gas was committed by its franchise to a rate schedule with the customers, predicated upon the contract rates with United, and that it would suffer irreparable injury were such rates with United increased. However, by order dated July 31, 1952, the Commission allowed the conversion tariff to become effective. No appeal or judicial review under Sec. 19 of the Act was taken from such order.

"On June 24, 1953, United filed with the Commission another revision of its schedule or rates (those here in issue). By the terms thereof, domestic gas would be sold at a price of 20¢ per Mcf, and industrial gas at a price of 13¢ per Mcf. This would constitute an increase of some 70% over and above the rates fixed by the contract amendment of 1946.

"Upon the filing of the new proposal, by order of July 10, 1953, the Commission set a hearing for July 20, 1953, to consider the lawfulness of such rates; and consolidated a number of proceedings involving United's rate structure. Both Tyler Gas and City sought and secured leave to intervene in this proceeding (Federal Power Commission Docket Nos. G–1142, G–1508, G–2019, G–2074, G–2210, 'In the Matters of United Gas Pipe Line Co.') in order to oppose such proposed increase. The effective date of such proposed rates was suspended, and the use thereof deferred, pending hearing, until Dec. 25, 1953, except insofar as same applied to industrial gas, which proposed schedule was permitted to become effec-

tive July 25, 1953. The explanation for the foregoing no doubt lies in the fact that pursuant to Section 4(e) of the Act, the Commission is empowered to suspend the operation of proposed increase in rates for sale of domestic gas, but not for a longer period than five months beyond the time when it would otherwise go into effect. This five month period expired Dec. 25, 1953. Pursuant to the same section of the Act, the Commission enjoys no such power to suspend the proposed rate for the sale of industrial gas; hence its effective date was fixed at July 25, 1953. * * *"

4. "I. The Court erred in holding that the Defendant was not precluded by its contracts with plaintiffs from invoking the provisions of the Natural Gas Act to increase gas rates provided in such contracts, in advance of a full hearing and final determination by the Federal Power Commission;

"II. The Court erred in refusing to enjoin Defendant from taking steps permitted by the Natural Gas Act to make effective increased gas rates charged Plaintiff Tyler Gas Service Company, in advance of a full hearing and final determination by the Federal Power Commission;

"III. The Court erred in holding that the provisions in the contracts between Plaintiffs and Defendant fixing maximum rates for gas were subject to abrogation, even though no proof was made that same was in the public interest;

"IV. The Court erred in holding that the Defendant was authorized under the Natural Gas Act by unilateral action to

what it claims is the fundamental error of the trial court, attack its holding that a public utility company may, by the simple expedient of filing a revised schedule with the Federal Power Commission, without a full hearing before and a finding by the Commission that such contract rates are unjust, unreasonable, or unlawful, disregard its solemn contracts fixing maximum rates.

Moving forward under these specifications and conceding that a contract fixing utility rates is deemed to have been made subject to the sovereign power of the government to alter it under proper circumstances, appellants insisting that it is not void but only voidable, quote from Vol. 73, C.J.S., Public Utilities, § 16, pages 1012–1013, where it is said:

> "Such a contract is, however, voidable only in that it cannot stand against modification by competent authority; and it is obligatory on the parties until abrogated by the state, falling only when the rate is altered or a different rate is fixed."

and from 43 Am.Jur. page 639:

> "Until the legislature or other body having the right to prescribe rates to be charged by public utilities has exercised this power, the rates are subject to contract between the corporation and its patrons, and such contracts will be deemed valid by the courts, and may be enforced by an appropriate mode."

Proceeding from the premises these contentions and citations supply, appellants insist: that Section 4, subd. (d) and (e) of the Natural Gas Act do not authorize a natural gas company to increase rates

fixed by contract solely by its own action in filing a new schedule with the commission; that this can be done only after a full hearing and determination that the contract rates are not in the public interest because unjust, unreasonable, or unlawful.

Citing in support Colorado Interstate Co. v. Federal Power Commission, 10 Cir., 142 F.2d 943, and insisting that nothing in Secs. 4, 4(e) and 5(a) of the Natural Gas Act is inconsistent therewith, the appellants urge upon us that the district judge erred in refusing interlocutory equitable relief and in dismissing the bill for want of equity.

We do not think so. We find ourselves, on the contrary, in agreement with the well considered and expressed views of the district judge, that the defendant, a public utility, may not by private contract fix binding long term rates either too high or too low, for if too high they would penalize the particular consumers affected, or if too low they might jeopardize the ability to serve the public and in both situations they would be the result of action in contravention, if not in defiance, of the Natural Gas Act, and in particular Section 4 thereof, and of the authority and jurisdiction of the Federal Power Commission.

Based upon these views, he thought, as we do, that the commission is empowered under and in accordance with the terms of the Act to afford relief and that any relief due the plaintiff must be sought from the commission and under and in accordance with the Act.

So thinking, he rejected, as we reject, the plaintiff's view that the district court

increase gas rates charged Tyler Gas Service Company in contravention of the contracts between Plaintiffs and Defendant;

"V. The Court erred in refusing to enjoin Defendant from violating its contract with, and representation to, the City of Tyler that during a period of sixteen years Defendant would sell gas to Tyler Gas Service Company (or to the City of Tyler if it should acquire the property of said Company) at rates not in excess of stipulated maximum rates;

"VI. The Court erred in holding that by virtue of the provisions of the Natural Gas Act the Court was without power to grant the relief sought by Plaintiffs;

"VII. The Court erred in holding that only the Federal Power Commission is authorized to grant the relief sought by the Plaintiffs herein:

"VIII. The Court erred in dismissing the Complaint for failure to show grounds for equitable relief."

could and should grant the relief asked, (1) an injunction prohibiting United from proceeding under Section 4 of the Act, and (2) a decree in effect requiring it to specifically perform the contract sued on, the Act and its proceeding under the Act to the contrary notwithstanding.

By supplemental brief, appellants urge upon us that the decision and judgment of the court below, that plaintiffs could not resort to the courts for relief but were remitted to the remedies provided by and under the Natural Gas Act, was a holding in effect that the United can by purely unilateral action, disregarding indeed nullifying its current rates, initiate higher ones.

As the district judge correctly pointed out in his opinion, this is not a correct, it is an incorrect, characterization of United's action in filing its schedule. Saying, "The answer to this contention, which at first blush is an appealing one, lies in the fact that this is not a unilateral action by United in disregard of its contract rates.", the district judge correctly declared that United has but followed the procedure prescribed by Section 4 of the Act, and that when the schedule became effective at the end of the suspension period, this would be not contrary but pursuant to the statutory scheme. So pointing, he correctly held that if he could and should restrain United from taking any of the preliminary steps provided by the statute, he should, as plaintiffs pray, restrain them altogether from abrogating or modifying the contract rates, and this, as Sections 4(d) and (e) of the Act make plain, the court cannot do.

Finally, attaching to their supplemental brief a copy of the opinion of the Court of Appeals for the Third Circuit, in Mobile Gas Service Corp. v. Federal Power Commission, 215 F.2d 883, 892, appellants invoke as authority for their contention below and here, the majority opinion of that court holding that, under Section 4(d) of the Act, "the Commission had no right to accept the filing of the new schedule without first determining the reasonableness or unreasonableness of the existing contract rates".

Assuming, without deciding, that the opinion of the majority is right, that of Judge Hastie, the dissenting member, is wrong, we think it plain that the opinion does not conflict with, that indeed it supports and confirms, the views of the district judge: that "Any relief to which plaintiff may be entitled in the premises must be secured through action of the commission and not of this court. The commission is amply empowered to give adequate relief."; and that the plaintiffs did not show grounds for equitable relief.

The judgment appealed from is affirmed.