**UNITED GAS PIPE LINE COMPANY,**
Appellant,

v.

**TYLER GAS SERVICE COMPANY,**
Appellee.

No. 16549.

United States Court of Appeals
Fifth Circuit.

Aug. 2, 1957.

Thomas Fletcher, Houston, Tex., James W. McCartney, Houston, Tex., Vinson, Elkins, Weems & Searls, Houston, Tex., of counsel, for petitioner-appellant United Gas Pipe Line Co.

Thos. B. Ramey, Tyler, Tex., A. D. Moore, Beaumont, Tex., Bryce Rea, Jr., Washington, D. C., Ramey, Calhoun, Brelsford, Hull & Flock, Tyler, Tex., of counsel, for appellee.

Before BORAH, RIVES and BROWN, Circuit Judges.

PER CURIAM.

This is another battle in the ceaseless struggle waged now for five years and on almost as many fronts. On the surface it appears to be a tactical skirmish of peripheral importance, but at least one protagonist sees in it capabilities of strategic decisiveness.

It started in July 1952 when United filed with the Federal Power Commission a rate (Docket G–2019) as a Conversion Tariff converting from, and increasing slightly, rates prescribed by the contract between it and Tyler Gas binding United to a 16-year rate. United filed a second increase in Docket G–2210 which, at first suspended by the Commission in July 1953, was thereafter collected by United under refund guaranty. Tyler Gas at-

tacked this by its suit for injunction, CA 1662, Eastern District Texas, which was declined December 29, 1953, by an unreported opinion. Tyler Gas appealed and we affirmed the dismissal of this equity suit for injunction, Tyler Gas Service Co. v. United Gas Pipe Line Co., 5 Cir., 217 F.2d 73 (November 24, 1954). United insists that the District Court determined, and we approved by our affirmance, that United had a right under the Natural Gas Act to file a new rate which thereafter *superseded* the contract rate. This they euphemistically refer to as "supersession." Tyler Gas did not seek certiorari and that decision, whatever it decided, is irretrievable. While the appeal was pending the Commission, rejecting the G–2210 rates, approved an agreed schedule of increases (Opinion 277). Tyler Gas agreed to this with the limited reservation in the event the decision in the case then pending before us on appeal should be favorable to Tyler Gas. That eventuality did not transpire so, United urges, this became an agreed and second "supersession" of the initial contract rate. These agreed G–2210 rates were thereafter paid to United by Tyler Gas without appeal. Subsequently, on September 30, 1955, and again on May 10, 1956, United filed a third and fourth rate increase in Docket No. G–9547 and G–10592, and as provided under Section 4 of the Natural Gas Act, 15 U.S.C.A. § 717c, at the expiration of the suspension period prescribed both, as had the earlier increase in Docket No. G–2210, went into effect under United's undertaking, approved by the Federal Power Commission, to refund the increases if found not just and reasonable. In the meantime the Commission had itself undertaken (Docket 1142) under Section 5, 15 U.S.C.A. § 717d, a comprehensive review of United's entire rate structure which included the increases to Tyler Gas under Docket G–2210 until those rates were modified by the agreed schedule approved in Opinion 277, and subsequently G–9547 and G–10592, as to which Section 4 proceedings were likewise pending.

While all of this was going on, the decision of the United States Supreme Court in United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373, and the companion case, Federal Power Commission v. Sierra Pacific Power Co., 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388, came down and, like manna from heaven, was seized on by Tyler Gas to revive its claim that the contract rate exclusively applied and could not be altered by unilateral action of United Gas. Seeking a peg on which to hang and test this claim, Tyler Gas then filed motions with the Commission in the Section 5 proceedings (Docket No. 1142) and in G–2210, G–9547 and G–10592 to strike the rates and for refunds in Dockets G–2210, G–9547 and G–10592, on the ground that, as Mobile proved, a unilateral rate increase in the initial contract rate is invalid, i. e., a void thing which never had any vitality. Tyler Gas correctly anticipated that in that proceeding United would urge that our decision, 217 F.2d 73, supra, approved the principle of supersession and that this was forever foreclosed by res judicata no matter what United Pipe Line Co. v. Mobile Gas Service Corp., supra, might do to rate increases under other contracts or as to other parties.

Unwilling to allow its adversary to contrive alone the tactics or strategy, United, urging whenever and to whomsoever it could, the plea of res judicata, filed in the Eastern District of Texas under CA No. 2153 an ordinary run of the mill simple claim for money judgment against Tyler Gas to recover the rate increases of Dockets G–2210, G–9547 and G–10592 which Tyler Gas, with its transfusion from Mobile, now felt bold enough to decline as to gas deliveries subsequent to February 1956.

Here is where we came in. For Tyler Gas moved the District Court to stay this suit for money judgment until, first, the Federal Power Commission had determined the motion of Tyler Gas to strike Dockets G–2210, G–9547, and G–10592 and subsequently, when this was

in the meantime denied by the Commission in Opinion 294, until the appeal of Tyler Gas, then pending, since argued and submitted but not yet decided, should be determined by the Court of Appeals for the District of Columbia in Tyler Gas Service Company (City of Tyler) v. Federal Power Commission, D.C.Cir., 247 F.2d 590. The District Court ordered "that the trial and all further proceedings in this cause be stayed and held in suspense or abeyance until the Procedure for Review of the decision and opinion of the * * * Commission in Opinion 294 shall have been concluded or become final."

United filed a double-barreled affair here. It contended that the stay by the judge of further proceedings in the action in his own court amounted to an injunction or restraining order from which under the Code, 28 U.S.C.A. § 1292(1), an appeal lies even though interlocutory. As to this, we do not think this was such an order. It related solely to the conduct of that suit itself. It did not purport to forbid action by anyone, court or litigant, in any other place or proceeding. It was purely a control of certain phases of that particular lawsuit. Confessedly an interlocutory order, there is no basis for an appeal unless, as this is not, this was an injunction, London Records, Inc., v. De Golyer, 5 Cir., 217 F.2d 574; United States v. Richardson, 5 Cir., 204 F.2d 552; Baltimore Contractors v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233; City of Morgantown v. Royal Insurance Co., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347; Cover v. Schwartz, 2 Cir., 112 F.2d 566; Beckhardt v. National Power & Light Co., 2 Cir., 164 F.2d 199; Republic of China v. National City Bank of New York, 2 Cir., 194 F.2d 170; Mottolese v. Preston, 2 Cir., 172 F.2d 308; International Nickel Co. v. Martin J. Barry, 4 Cir., 204 F.2d 583; Triangle Conduit & Cable Co. v. National Electric Products Corp., 6 Cir., 127 F.2d 524; Sinclair Refining Co. v. Tompkins, 5 Cir., 133 F.2d 198; Wilson Bros. v. Textile Workers Union of America, CIO, 2 Cir., 224 F.2d

176, certiorari denied 350 U.S. 834, 76 S. Ct. 70, 100 L.Ed. 745. United's appeal must therefore be dismissed.

■ Whether mandamus should issue has been a more difficult question for abdication by the District Judge of his constitutional duty to adjudicate could not be justified merely because some or all of the legal issues were pending in another (administrative) proceeding and to defer until a decision there would avoid an unnecessary or difficult determination of legal questions by the judge. McClellan v. Carland, 217 U.S. 268, 30 S Ct. 501, 54 L.Ed. 762; United States Mortgage & Trust Co. v. Deaver, 5 Cir., 44 F.2d 913; In re Howard, 5 Cir., 130 F.2d 534.

But the judge's Return and the argument by his able and disinterested counsel appearing in his behalf, convinces us that this is not what occurred. Indeed, this demonstrates that were we to issue the writ, we would not only be telling the judge what was involved in the case and how he should try it, we would be telling him how he must decide it. Whether, with this rich history of prolonged litigation, the pending District Court suit, CA 2153, is, as United urges with considerable force, a mere suit to recover for gas delivered under rates which, by Section 4, " * * * shall go into effect * * * " even though the Section 4 investigation proceedings are still pending and after collection the gas company may have to refund them to the extent that such rates are "by * * * [the Commission's] decision found not justified," is itself a substantial justiciable question. The District Judge is entitled to try this without ministerial direction from us.

Likewise, whether the two subsequent increases (Dockets G–9547 and G–10592) are or are not such an outgrowth of the rate not enjoined by our earlier action, 217 F.2d 73, as to be under the res judicata umbrella of that decision is one for his careful trial. Whether, in view of the interpretation of the Natural Gas Act by Mobile, supra, the rates in Dockets G–9547 and G–10592, admittedly uni-

lateral increases in an earlier initial contract rate, could have been *validly* filed, i. e., in a jurisdictional sense so as to be within the power of the Commission to receive and thereafter bestow upon them a Section 4 post-suspension validity for collection subject to later reimbursement, is similarly a question meriting a trial in the usual sense.

To a large extent the problems are intertwined with or may likely be affected by the matters which are now pending in the review of administrative proceedings in the Court of Appeals for the District of Columbia.

This was not then the simple case of a judge merely wishing to shoulder off onto another court or courts the agony of decision in a case fully ripe for action by him. Until that pending administrative proceeding should be determined, it was impossible for him to conclude that such ultimate action might not, if Tyler Gas were wholly or partially successful, destroy altogether or substantially the "filed" rate upon which United sought its money judgment.

Whether these possibilities are finally established to have had a substantial basis is of no moment. It may even turn out that the case below was a simple suit to recover for the undisputed deliveries at the prices prescribed in G–9547 and G–10592 deemed "effective" by operation of Section 4 after the suspension period, so that the effect of the prior judgment in Civil Action 1662 and our affirmance, 217 F.2d 73, on res judicata, might never be involved at all. The important thing is that this careful District Judge, whose actions and concerns here have received the mutual acclaim of both parties as conscientiously done so that the error, if one was made, was a mistaken judgment, considered in his discretion that the interests of justice require postponement of further definitive action by him until some, or all of these other matters, which may be decisive, are disposed of.

For us, in this complex record, to say that this was so wholly without substance as to be an arbitrary refusal to function as a judge, would mean that we were determining that all was so clear the answers to all of these legal questions so positive, that only one kind of judgment should be entered. We would be seers indeed could we do this. We may not use mandamus in the attempt. International Nickel Co. v. Martin J. Barry, 4 Cir,. 204 F.2d 583; Kansas City Southern Railway Co. v. United States, 282 U.S. 760, 51 S.Ct. 304, 75 L. Ed. 684; American Life Insurance Co. v. Stewart, 300 U.S. 203, 57 S.Ct. 377, 81 L. Ed. 605; Radio Corporation of America v. Igoe, 7 Cir., 217 F.2d 218; Ray v. Hasley, 5 Cir., 214 F.2d 366; Jewell v. Davies, 6 Cir., 192 F.2d 670; In re Cohen, 5 Cir., 107 F.2d 881; In re Parsons, 150 U. S. 150, 14 S.Ct. 50, 37 L.Ed. 1034; Petsel v. Riley, 8 Cir., 192 F.2d 954; Larsen v. Switzer, 8 Cir., 183 F.2d 850; United States v. Fee, 9 Cir., 138 F.2d 158.

As the parties and their tireless advocates demonstrate the legitimate capacity to seize onto and make the most of every phrase, every word, every writ or motion, granted or denied, things said or unsaid, approved or disapproved, we should make it clear that what we write is merely to show why mandamus is not granted. We do not decide, we do not intimate, we do not say or do anything with even the remotest purpose of indicating how any of these things should be decided or what we think about them or might do with them as all of these and many more come—as they surely will—to us for decision. The slate is clean for others.

Appeal dismissed.

Writ of mandamus denied.