In re James Anderson Kelley, a/k/a James A. Kelley, Bankrupt.

James Anderson KELLEY, Appellant,

v.

CONWED CORPORATION, a Delaware Corporation, Appellee.

No. 76–173–NN.

United States District Court, E. D. Virginia, Newport News Division.

April 13, 1977.

Billy C. Brooks, Newport News, Va., for plaintiff-appellant.

Jerrold G. Weinberg, Stackhouse, Weinberg & Stewart, Norfolk, Va., Lawrence R. Siegel, Pickett, Spain & Lyle, Virginia Beach, Va., for defendant-appellee.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on appeal from a decision of the Bankruptcy Judge that a debt owed the plaintiff, Conwed Corporation, by the bankrupt is not dischargeable under the provisions of Section 17(a)(4) of the Bankruptcy Act (11 U.S.C. § 35(a)(4)). Jurisdiction of this Court is based on 11 U.S.C. § 2a(10).

The historical facts of this case are not disputed. The defendant-bankrupt during 1975 was president and sole stockholder of Virginia Construction Specialties, Inc. (hereinafter referred to as "Specialties"), now a bankrupt corporation. He also at that time was the president and dominant stockholder of VCS Plastering, Inc., (hereinafter referred to as "VCS"), a still solvent corporation. On the last three business days of Specialties, December 29-31, 1975, defendant paid himself $10,369.10 from the funds of Specialties. In addition, during 1975 the defendant caused the insolvent corporation, Specialties, to pay a net $32,-

186.16 to VCS, defendant's solvent controlled corporation. Defendant also endorsed over to VCS three checks, $22,876.30 in total, payable to Specialties from Ranger Construction.

The debt which plaintiff seeks to exempt from discharge in this case amounts to $52,-626.55 (after credits have been applied). This sum due was originally created by the sale of goods on credit to Specialties. The defendant's liability for the debt results from his personal guarantee of the credit extended by plaintiff to Specialties.

Plaintiff relies on the following provision of the Bankruptcy Act to protect its claim from the operation of defendant's discharge:

> "a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . .

> "(4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity;"

11 U.S.C. § 35(a). The plaintiff argues, and the court below decided, that the transfers detailed above amount to misappropriation by the defendant while acting in a fiduciary capacity, barring discharge of the debt owed plaintiff.

■ Under Rule 810, Federal Rules of Bankruptcy, this Court is bound to "accept the referee's findings of fact unless they are clearly erroneous" giving due regard for the referee's opportunity to judge the credibility of the witnesses.

In this case, there can be little doubt that the defendant did use his position as president of Specialties to favor himself and his controlled creation VCS as creditors over the other creditors of Specialties, including plaintiff among others. The findings of the Bankruptcy Judge in this regard are amply supported by the record. The legal implications of this situation, however, are not in accord with the decision and judgment entered below.

■ The analysis of this case begins with *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). In that case, which arose in the Western District of Virginia, the United States Supreme Court held that a bankruptcy court had the authority to subordinate or deny a debt claimed by a former officer of a bankrupt corporation where it was shown that the debt claimed had been created by the officer fraudulently and in derogation of the rights of other corporate creditors. The Court indicated the fiduciary nature of corporate officers and dominant stockholders. *Id.* at 306, 60 S.Ct. 238. Bankruptcy courts, as courts of equity, are empowered to set aside transactions not in conformity with the duty of good faith imposed upon fiduciaries. The Court unanimously concluded that in the corporation's bankruptcy proceeding, the bad faith of the officer could be used to set aside even a claim reduced to a recorded judgment. The Court did not hold or even imply that a corporate creditor is given a cause of action in its own right against the officers. "While normally that fiduciary obligation is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee." *Id.* at 307, 60 S.Ct. at 245 [footnotes omitted]. Once bankruptcy is begun and the assets of the corporation are controlled by a court of equity, the interests of corporate creditors are protected by the trustee. Plaintiff has cited no authority for the proposition that an individual creditor may recover against a corporate officer for a general misappropriation of corporate funds.

■ There is no question but that the defendant's actions created a claim against him in the amount misappropriated by him on behalf of the corporation or its trustee. This does not mean the defendant is fully liable to each individual creditor who was left unpaid by the insolvency of Specialties.

■■ The debt relied on by plaintiff in this case arose from the defendant's guaranty of Specialties' debt. That debt bears no relationship to the misappropriations found below. The debts excepted from discharge in § 17 of the Act are each a particu-

lar kind of debt, the nature of which, in the judgment of Congress, justifies departure from the rule of discharge. Improper conduct of the bankrupt which affects all his debts may bar his discharge *in toto* (see §§ 14 and 15 of the Act), but such is not the subject of the exceptions of § 17. Plaintiff's debt is not one "created" by misappropriation, any more than are the debts owed to other creditors of Specialties. The only distinctive feature of plaintiff's claim is defendant's guaranty—a fact unrelated to the misappropriation. Indeed, for plaintiff to rely on the fact of misappropriation to preserve its debt is somewhat ironic because the movement of funds from Specialties to the defendant theoretically increased the assets available to pay the guaranty. If those assets were still present, plaintiff would not have suffered, and the only losers would be Specialties' creditors who had no personal guaranty.

Thus, plaintiff is not entitled under the literal terms of § 17 to exemption of its claim from discharge. Equity also dictates against such a result. Plaintiff has made no showing that it was entitled to priority in all the misappropriated funds. No indication has been made of the total claims against Specialties which might be allowed to share in the benefit of the return of corporate assets. To allow plaintiff a judgment against defendant, who, after all, was also a creditor of Specialties, in the full amount of its claim would, therefore, be most inequitable.

The cases cited by plaintiff do not suggest a contrary conclusion. As noted above, *Pepper v. Litton* involved the disallowance in bankruptcy of a claim by an officer, not the preservation of a claim against the officer in his own bankruptcy. In like regard was *Braddy v. Randolph,* 352 F.2d 80 (4th Cir. 1965).

The Second Circuit cases explaining misappropriation do not aid plaintiff in establishing a direct claim. They illustrate only that the defendant violated a duty which gave Specialties a claim against him. *In re Bernard,* 87 F.2d 705 (2d Cir. 1937), held that a claim in favor of the corporation's assignee for benefit of creditors against an officer for misappropriation was not dischargeable in the officer's bankruptcy. The distinction between an action by an assignee or trustee or the corporation itself, each acting on behalf of all creditors, and an action by a single creditor for its own benefit is vital here. *Bernard,* while allowing a claim for misappropriation to be preserved against the bankrupt officer, did so on behalf of the corporation and all of its creditors. The language from this case quoted by plaintiff in its brief illustrates this point, although plaintiff chose not to emphasize the critical part:

" . . . [T]he bankrupt brought about the payments when he knew that the corporation was insolvent and that the interests of other creditors would be sacrificed for the benefit of its fiduciaries. This, in our opinion, was a 'misappropriation' within the meaning of the Bankruptcy Act and the indebtedness *to the corporation* which arose from it was not dischargeable."

*Id.* at 707 [emphasis added; citation omitted].

Similarly, in *In re Hammond,* 98 F.2d 703 (2d Cir.), *cert. denied,* 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1938), the judgment creditor of the bankrupt officer was the trustee in bankruptcy of the corporation which had been harmed by the officer's conduct. Thus, *Hammond* also fails to support plaintiff's claim in this case.

No allegation or proof in this case indicates that the funds misappropriated bore any special relationship to the pre-existing debt owed the plaintiff. This case is thus distinguishable from the myriad of cases under § 17(a)(4) in which the misappropriator bore a particular duty to someone regarding specific property or monies. See, e. g., *Hamby v. St. Paul Mercury Indemnity Co.,* 217 F.2d 73 (4th Cir. 1954). The instant case is thus distinguishable from *John P. Maguire & Co. v. Herzog,* 421 F.2d 419 (5th Cir. 1970), in which particular funds owed to the creditor under a floor plan financing arrangement were diverted by the bankrupt to pay off other corporate debts upon

which he faced joint liability. The Court in that case upheld a finding that the bankrupt officer's personal liability to the corporate creditor was created by the misappropriation of funds. In the instant case, it has been clear from the outset that plaintiff relied on defendant's personal guaranty of the corporate debt to establish the basis of defendant's liability. Furthermore, as noted above, no connection between plaintiff and the misused funds such as existed in *Herzog* has been alleged or proved.

Accordingly, it is the opinion of this Court that the sum claimed by the plaintiff as owed to it by defendant was not created by misappropriation or defalcation within the meaning of § 17(a)(4) of the Bankruptcy Act and that the $52,626.55 debt as presented by plaintiff is not exempt from defendant's discharge in bankruptcy.

Having determined that plaintiff is not the proper party to present this claim under § 17, it is not enough simply to reverse the judgment below. On remand, the court below is directed to consider the re-opening of Bankruptcy Case No. 76–69–NN, the bankruptcy of Virginia Construction Specialties, Inc., under § 2a(8) of the Act and Rule 515, Federal Rules of Bankruptcy, to permit the presentation of the claim of misappropriation against defendant by the trustee of Specialties for the benefit of all the corporation's creditors. Even though this claim against defendant was not raised timely in the corporation's bankruptcy either by the trustee or plaintiff (which was involved in that proceeding), the referee should determine the equity of re-opening that case for the administration of this asset and whether the claim, if and when established, in favor of the corporation's trustee should be discharged in this bankruptcy. Presentation of the claim by Specialties' trustee will place this situation in the same posture found in *Bernard, supra,* and *Hammond, supra.* The Court below should also consider whether equity will permit a reduction in the judgment, if any, against the defendant in the light of his status as a corporate creditor, as well as any other facts and circumstances

pertinent to the ultimate resolution of liability in this case. The defendant's bankruptcy case cannot be closed until these other matters are settled.

The judgment appealed from is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.