In the Matter of Hugh Basil
WHITLOCK, Bankrupt.

EALY CAMPBELL MOBILE HOMES, INC., Transamerica Insurance Group and Kansas Mobile Homes, Inc., Plaintiffs,

v.

Hugh Basil WHITLOCK, Defendant.

Civ. A. No. 77–0333–CV–W–2.

United States District Court,
W. D. Missouri, W. D.

May 18, 1978.

---

Charles M. Cassel, Overland Park, Kan., Michael D. Fitzgerald, Michael H. Berman, Kansas City, Mo., for plaintiffs.

Wilbur L. Pollard, Kansas City, Mo., for defendant.

1. Schedule A, Official Form 6, listed unsecured debts owed to Ealy-Campbell Mobile Homes, Inc. ($115,200.00), Kansas Mobile Homes, Inc. ($11,820.00), and Wolverine Insurance Corp. ($14,669.07). Each of these creditors had a lawsuit pending in a state court against Whitlock at the time he filed his petition in bankruptcy. See, Question # 10, Official Form 7.

## MEMORANDUM OPINION AND ORDER REVERSING IN PART AND AFFIRMING IN PART THE DECISION OF THE BANKRUPTCY JUDGE

COLLINSON, District Judge.

### I.

Hugh Basil Whitlock appeals from an order of the Bankruptcy Judge declaring certain debts nondischargeable and entering judgment against him on those claims. Whitlock filed his voluntary petition in bankruptcy on April 29, 1976, listing the creditor-appellees herein on his schedule of debts.[1] The creditors are Ealy-Campbell Mobile Homes, Inc. (hereinafter Ealy-Campbell), Kansas Mobile Homes, Inc. (hereinafter Kansas), and Transamerica Insurance Group (hereinafter Transamerica).[2]

In the proceedings below, these creditors contended that the liability to them was nondischargeable in bankruptcy under the provisions of section 17(a)(4) of the Bankruptcy Act, 11 U.S.C. § 35(a)(4) (1970). The Bankruptcy Judge accepted their contentions based on findings of fact set forth in an opinion filed March 18, 1977. Whitlock duly perfected the instant appeal. The Court has jurisdiction under the provisions of 11 U.S.C. § 11(10) (1970).

### II.

The Court must accept the Bankruptcy Judge's findings of fact unless they are "clearly erroneous" and must give due regard to the Bankruptcy Judge's opportunity to assess the credibility of witnesses. Rule 810, Rules of Bankruptcy Procedure; *Jensen v. Uhlenhopp*, 508 F.2d 412 (8th Cir. 1975). Whitlock does not seriously challenge any of the Bankruptcy Judge's factual findings. His basic contention is that the

Whitlock's forms do not indicate whether these debts were disputed, contingent or liquidated.

2. It is undisputed that Transamerica assigned its chose in action to Wolverine Insurance Corporation. The Bankruptcy Judge entered judgment in favor of Wolverine on the basis of facts involving Transamerica.

facts found are insufficient to support the conclusions reached and that the creditors have failed to sustain their burden of proof under Rule 407, Rules of Bankruptcy Procedure.[3] Accordingly, the Court accepts the factual findings on the business setting and transactions involved in these cases. The judgments in favor of Ealy-Campbell and Kansas will be reversed. The judgment in favor of Transamerica will be affirmed.

### III.

Whitlock was an officer, director and shareholder of Comet Enterprises, Inc.[4] (Tr. 5). Comet Enterprises was a holding company which wholly owned several subsidiary corporations, including Comet Insurance Agency and Comet Financial Corporation.[5] Whitlock was also an officer and director of the subsidiaries. (Tr. 6–7, 9, 11). These companies conducted business from a single office and their employees performed functions on behalf of all of them. (Tr. 13). This functional overlap among employees included Whitlock since his duties were performed on behalf of the whole group of companies. (Tr. 7). Whitlock was involved in the formation of these companies in 1973 and became active in the day-to-day management in January, 1974. (Tr. 6).

Comet Financial Corporation and Comet Insurance Agency were involved in financing mobile home sales. Comet Financial would acquire chattel paper from mobile home dealers evidencing the sale of a mobile home and resell the paper to financial institutions, primarily banks. The proceeds thus obtained would be remitted to the dealer. Comet Financial was compensated by the purchasing bank from interest paid on the chattel paper by the mobile home buyer. (Tr. 8–9). Comet Insurance Agency acted as the insurance agent in the sale of insurance on the mobile homes being financed by Comet Financial. (Tr. 10). This was the setting which gave rise to the three actions involved in this appeal.

### IV.

The claims and judgments in favor of Kansas and Ealy-Campbell are based on dealings they had with Whitlock through Comet Financial. The factual situations are very similar and are only briefly summarized here.

In November, 1973, Ealy-Campbell agreed to sell a mobile home to Max and Mary Lou Kilburn. The sale was contingent upon Ealy-Campbell securing financing for the buyers. (Tr. 101). This was arranged with the Comet group. The Kilburns executed a note and security agreement in favor of Ealy-Campbell. (Tr. 102). This chattel paper was transmitted to Comet. Ealy-Campbell expected to receive the compensation within a week or ten days. (Tr. 104). The payment was not received.

Representatives of Ealy-Campbell had numerous conversations with people at Comet regarding this transaction. Whitlock was advised of the situation on ten or twelve occasions. (Tr. 105). Whitlock always assured Ealy-Campbell that payment would be forthcoming but that Comet was having trouble "placing the paper." (Tr. 106). In March, 1974, Comet issued a check to Ealy-Campbell which was subsequently dishonored for insufficient funds. (Tr. 107).

Whitlock did not tell Ealy-Campbell that the Kilburn chattel paper had previously been pledged, along with other chattel paper, to the Park Bank of St. Joseph, Missouri. This pledge was made in February, 1974, as security for a loan to Comet. Whitlock personally guaranteed the loan.[6]

---

**3.** Whitlock has requested oral argument pursuant to Rule 809, Rules of Bankruptcy Procedure. The Court finds argument unnecessary in this case and the request is therefore denied. See, Local Bankruptcy Rule 19(I).

**4.** Comet was a Kansas corporation adjudicated bankrupt in February, 1975. (Tr. 4).

**5.** Comet Financial is the successor company to Plains Financial Corporation. Plains was involved in the same line of business and was run by the same people, including Whitlock. (Tr. 16, 116–117).

**6.** Three other principals of Comet also guaranteed this loan.

(Tr. 109). The loan proceeds were used to pay other creditors of Comet. Ealy-Campbell was never paid for the chattel paper. (Tr. 123).

The transactions involving Kansas were virtually the same. In December, 1973, Kansas agreed to sell a mobile home to Lawson, Bradley and Bethene Johnson. Financing was arranged with the Comet group and the Johnsons executed the note and security agreement. A week later, a similar transaction was accomplished between Kansas, Comet, and Jerry and Patricia Gale. Both sets of chattel paper were transmitted to Comet. Kansas expected payment within a week or two. (Tr. 54). Kansas was never paid on either transaction.

Mr. Williams, president of Kansas, spoke with Whitlock on several occasions about these transactions. (Tr. 55). He went to the Comet office in April, 1974 and spoke with Whitlock in person. (Tr. 56, 72). Williams was always assured that payment on the two transactions would be forthcoming. (Tr. 66).

Whitlock did not tell Williams that the Johnson and Gale chattel paper had been part of the collateral pledged to the Park Bank as security for the February loan to Comet. (Tr. 67). As noted, Whitlock personally guaranteed the loan. (Tr. 68). The loan proceeds were used to pay other creditors. (Tr. 123).

## V.

Based on these facts, the Bankruptcy Judge held Whitlock's conduct constituted "misappropriation or defalcation" and entered judgment in favor of Ealy-Campbell and Kansas for the full amount of their claims. See, 11 U.S.C. § 35(c)(3). This holding was based on 11 U.S.C. § 35(a)(4), which, in pertinent part, provides:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, . . . except such as . . . (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; * * *.

It is clear that Whitlock did not act in a fiduciary capacity with respect to Kansas or Ealy-Campbell. The "fiduciary" exception to the discharge provisions of the Bankruptcy Act have consistently been construed as referring only to express and technical trusts. The Bankruptcy Judge recognized this aspect of the case by quoting 1A *Collier on Bankruptcy,* ¶ 17.24[a], pp. 1708–1711 (1976), as follows:

The [basic requirement necessary for a finding of defalcation] is that the bankrupt be acting in a "fiduciary capacity." This latter qualification has consistently, since its appearance in the Act of 1841, been limited in its application to what may be described as technical or express trusts, and not to trust *ex maleficio,* that may be imposed because of the very act of wrongdoing out of which the contested debt arose. Thus, unless there be some additional fact, § 17(a)(4) does not apply to frauds of agents, bailees, brokers, factors, partners, and other persons similarly situated.

The Bankruptcy Judge then held, with respect to the claims of Kansas and Ealy-Campbell, that an "additional fact" was present because the bankrupt had used his position as a corporate officer to gain a personal benefit at the expense of other corporate creditors.[7] Specifically, the judge stated:

Similarly, with respect to the claims of Kansas Mobile Homes and Ealy-Campbell, the "additional fact" which provides an exception to the rule that the "fiduciary" provisions of Section 35(a)(4), Title 11, United States Code, does [sic] not

---

**7.** Under the express terms of 11 U.S.C. § 35(a)(4), misappropriation or defalcation by an "officer" creates a nondischargeable obligation to repay debts thereby created. It is unclear if or why the Bankruptcy Judge chose to rely on the "fiduciary" provisions of the stat-

ute. In any event, Whitlock's status as an officer is undisputed. (Tr. 5–6). See Part III, *supra.* An officer of a private corporation is covered by this section. 8 Remington on Bankruptcy, § 3368, p. 256 (6th ed. 1955).

ordinarily apply to the sale of goods held in a fiduciary capacity has been held to be present when "an officer of a corporation has misused his position to gain a personal benefit at the expense of . . corporate creditors." *John P. Maguire & Co. v. Herzog*, 421 F.2d 419, 422 (5th Cir. 1970).

The Bankruptcy Judge extended the holding in *Herzog* to the facts of this case. The Court believes that the quoted language from *Herzog* is a correct statement of the law. However, *Herzog* is clearly distinguishable and is not on point with the facts of this case. The debt in question in *Herzog* arose when the bankrupt-officer used proceeds obtained from the sale of property acquired by the corporation under a floor plan financing arrangement to pay off the claims of corporate creditors *to whom he was secondarily liable.* In the officer's individual bankruptcy, the creditor behind the floor plan sought to have the corporation's debt for the sold property charged to the bankrupt and declared nondischargeable pursuant to 11 U.S.C. § 35(a)(4).[8] The conduct complained of in *Herzog* was similar to the complained of conduct in this case. The court stated:

> Although it is true that the debt due [to American] originally arose out of [the corporation's] contractual obligation to [American], it is the direction and application of proceeds from sales of American furniture to creditors other than appellee, to whom the payments were due, that is the basis of the present suit.

*John P. Maguire & Co. v. Herzog, supra* at 422. In this case, Whitlock's alleged misconduct was the diversion of loan proceeds obtained from the pledge of chattel paper belonging to Kansas and Ealy-Campbell to other corporate creditors.[9]

The court in *Herzog* held that the officer's conduct created a nondischargeable liability because the corporate creditors to whom he diverted the funds had secondary claims against him. Because he had used his corporate office to obtain a personal benefit at the expense of corporate creditors, their claims were cognizable in his individual bankruptcy. The court stated:

> Hence it can be seen that § 17(a)(4) has been applied when an officer of a corporation has misused his position to gain a personal benefit at the expense of the corporation. or corporate creditors. The District Court found that appellant was partially motivated by a desire to indemnify himself against loss when he applied proceeds owing to appellee to other claims on which he was secondarily liable. This is a factual determination to be made by the trier of fact. A careful review of the trial record and briefs of the parties convinces us that such finding was not clearly erroneous.

*John P. Maguire & Co. v. Herzog, supra* at 422.

The Bankruptcy Judge held that the element of "personal benefit" was present in this case and that this justified holding Whitlock liable for Comet's debts to these creditors. However, there is nothing in the record to indicate that the loan proceeds obtained by the pledge of property belonging to these creditors were used to satisfy personal liabilities of Whitlock. It is true that he guaranteed the loan from Park Bank to the Comet group. That, however, is very different from using the loan proceeds to pay creditors to whom he was secondarily liable. Thus, the rationale of

---

8. The creditor's claim under 11 U.S.C. § 35(a)(2) was rejected by the district court and was not urged on appeal.

9. The Court finds that Whitlock's other conduct is significant only to highlight the actual conduct constituting the alleged "misappropriation or defalcation." The fact that the chattel paper was pledged rather than sold and the fact that the pledge was not disclosed to these creditors is not sufficient to invoke the nondischarge provisions. If the loan proceeds obtained from the pledge had been properly applied, there would be no dispute. Accordingly, the fact that the chattel paper was pledged rather than sold and the fact that this was not disclosed to Kansas and Ealy-Campbell become significant only because they were not paid. Therefore, the allegedly prohibited conduct must consist of the diversion of the loan proceeds to the "wrong creditors." See, *In re Angelle*, 425 F.Supp. 823 (W.D.La.1977).

**1388**

*Herzog* is not applicable to this case because the facts upon which it was based are absent.

 Without the presence of evidence showing that the bankrupt-officer obtained some illegitimate benefit from his position, the debts remain those of the corporation.[10] Since they are corporate debts, they cannot be asserted in Whitlock's individual bankruptcy. Even when the element of personal gain is present, it does not automatically follow that corporate debts can be asserted in an officer's individual bankruptcy. This reasoning was adopted in a case analogous to the instant case, *Kelley v. Conwed Corp.,* 429 F.Supp. 969 (E.D.Va.1977).

Kelley was an officer and controlling shareholder in two corporations, Specialities and VCS. Specialities was bankrupt at the time of Kelley's individual bankruptcy. On Specialities' last three business days, Kelley caused it to make cash transfers to him and VCS. Conwed Corporation had previously sold goods to Specialities on credit. The extension of credit to Specialities by Conwed was personally guaranteed by Kelley. In Kelley's individual bankruptcy, Conwed contended that the debt created by Kelley's guarantee was nondischargeable because his conduct in causing the transfers of Specialities' assets constituted "misappropriation or defalcation while acting as an officer" within the meaning of 11 U.S.C. § 35(a)(4).

The Bankruptcy Judge agreed and entered judgment in favor of Conwed. The District Court reversed because the debt was owed by Specialities, not Kelley. The court cited *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), as authority for the proposition that a bankruptcy court, as a court of equity, has the power to subordinate or disallow a claim by an officer-creditor of a bankrupt corporation in the corporate bankruptcy when the claim has been created fraudulently or in derogation of the rights of other corporate creditors. The court then stated:

> The Court did not hold or even imply that a corporate creditor is given a cause of action in its own right against the offi-

10. The other cases cited by the parties are consistent with the proposition. *In re Bernard,* 87 F.2d 705 (2d Cir. 1937) and *In re Hammond,* 98 F.2d 703 (2d Cir. 1938), cited by the Fifth Circuit in *Herzog,* both held that an officer's transfer of corporate assets *to himself* created a nondischargeable liability. Such conduct was held to constitute "misappropriation" within the meaning of 11 U.S.C. § 35(a)(4).

In *Callaway Bank v. Hickman,* 410 F.Supp. 528 (W.D.Mo.1976), the bankrupt obtained a loan secured by nonexistent collateral. The portion of the loan left unsecured by this conduct was held nondischargeable in his individual bankruptcy. However, that case arose under the "conversion" provisions, 11 U.S.C. § 35(a)(2), which necessarily involved a personal gain to the bankrupt.

*Hamby v. St. Paul Mercury Indemnity Co.,* 217 F.2d 78 (4th Cir. 1954), involved misappropriation of entrusted funds by a real estate broker. The misappropriation, and the personal gain, was admitted and the only issue was whether the bankrupt was a fiduciary. Thus, *Hamby* has no bearing on this case.

The leading case construing the term "defalcation" is *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir. 1937). In his fiduciary capacity as a receiver, the bankrupt was allowed certain fees which he spent on himself prior to final disposition of the case. The order granting the fee was reversed on appeal and he was unable to account for the money. In his individual bankruptcy, the liability thus created was held nondischargeable because his conduct constituted "defalcation" by a fiduciary. Obviously the bankrupt obtained a personal gain from the conduct later held improper. There was no question in *Herbst* of holding an officer responsible for corporate debts. Even still, there was the element of personal gain that is absent in this case.

There is only one reported federal case holding an officer liable for corporate debts without a showing of personal gain. In *Kaufman v. Lederfine,* 49 F.Supp. 144 (S.D.N.Y.1943), the bankrupt-officer had caused preferential payments to be made to some corporate creditors, to the detriment of others, while the corporation was insolvent. The officer's liability under a New York statute prohibiting such payments was declared nondischargeable in his individual bankruptcy. The court remarked that personal gain was unnecessary. The case is cited for that proposition at 8 Remington on Bankruptcy, § 3368, p. 258 (6th ed. 1955). However, the fact of the officer's liability was established by the state statute. Personal gain was unnecessary for that statutory liability. In this case, the Court views the source of Whitlock's liability as the critical issue and there is no state statute involved on these two claims. Compare, Part VI, *infra,* at note 18.

cers. \* \* \* Once bankruptcy is begun and the assets of the corporation are controlled by a court of equity, the interests of corporate creditors are protected by the trustee. Plaintiff has cited no authority for the proposition that an individual creditor may recover against a corporate officer for a general misappropriation of corporate funds.

There is no question but that the defendant's actions created a claim against him in the amount misappropriated by him on behalf of the corporation or its trustee. This does not mean the defendant is fully liable to each individual creditor who was left unpaid by the insolvency of Specialities.

*Kelley v. Conwed Corp., supra* at 971. It should be noted that in *Kelley,* the debt sought to be imposed on the bankrupt was admittedly his obligation since he had personally guaranteed the corporation's debt to Conwed. In this case, the debts sought to be imposed on Whitlock are solely corporate debts.[11] Since there is nothing to indicate the source of Whitlock's alleged liability for Comet's debts, and since he obtained no personal benefit from abuse of his position as an officer, this is a more compelling case for application of the rationale of *Kelley.*

It is true that in *Kelley* the transferred corporate assets were not the specific property of the complaining creditor. In this case, the chattel paper pledged to Park Bank was still the creditors' property at the time of the pledge. However, neither Ealy-Campbell nor Kansas have ever contended that Whitlock's conduct constituted a "willful and malicious conversion of the property of another."[12] Their position has always been that Whitlock's conduct amounted to "misappropriation or defalcation while acting as an officer."[13]

There is simply no basis for allowing corporate debts to be asserted against an individual officer in this situation. The court in *Kelley* ultimately held that the aggrieved creditor's proper remedy was to attack the officer's transfers in the corporate bankruptcy. It ordered the corporate bankruptcy reopened for that purpose.[14] By such an order, the court necessarily held that a creditor cannot assert his claim against the corporation in the individual bankruptcy of one of the corporate officers simply because he is unsatisfied with the results of the corporate bankruptcy. Ealy-Campbell and Kansas presented their claims in Comet's bankruptcy and were apparently unsuccessful in collecting the amounts owed.[15] It does not follow that they are entitled to collect from Whitlock. In the corporate bankruptcy, they were not able to press claims against Whitlock because he obtained no personal benefit from misconduct while acting as an officer. He did not transfer corporate assets to himself as was done in *Kelley v. Conwed Corp., supra,* nor did he satisfy personal indebtedness with corporate assets as was done in *John P. Maguire & Co. v. Herzog, supra.* Since Whitlock's conduct did not result in personal gain at the expense of corporate creditors, they have no claim against Whitlock as an individual. Accordingly, they cannot as-

---

**11.** In the proceedings below, it was assumed that the debts were Whitlock's and that the only question was whether they were dischargeable. However, the Court views the existence of the debts as the critical issue. There is nothing in the record to indicate the source of Whitlock's liability. The creditors urged the Bankruptcy Judge to consider the debts admitted since they were listed without qualification on Whitlock's schedules. See, note 1, *supra.* The Court does not view the alleged omissions of the nature of the listed debts as an admission of liability. It is probable that the reason they were listed at all is because these creditors had suits pending in state court at the time Whitlock filed for bankruptcy.

**12.** 11 U.S.C. § 35(a)(2). The debt created by such conduct would be nondischargeable in bankruptcy. See, 8 Remington on Bankruptcy, § 3364, pp. 248–249 (6th ed. 1955).

**13.** 11 U.S.C. § 35(a)(4).

**14.** Such an order is not appropriate here because Comet's bankruptcy was not in this judicial district. See, note 4, *supra.*

**15.** The only reference to Comet's bankruptcy is at Tr. 4. On page 4 of Whitlock's brief, he states that Ealy-Campbell and Kansas presented their claims in the corporate bankruptcy. Neither creditor has disputed this assertion.

sert their claims against Comet in Whitlock's individual bankruptcy. This is simply not a proper case for application of 11 U.S.C. § 35(a)(4). Therefore, the judgments in favor of Ealy-Campbell and Kansas must be reversed.

## VI.

The claim of Transamerica differs from the claims of Ealy-Campbell and Kansas because of the parties' relationship and the effect of state law. The Bankruptcy Judge held that Whitlock was a fiduciary with respect to Transamerica and, therefore, his liability for unremitted premiums collected by Comet Insurance Agency was nondischargeable under 11 U.S.C. § 35(a)(4). It is undisputed that Transamerica was not paid the premiums collected by Comet and reflected in account statements dated December 31, 1973 and March 8, 1974. Whitlock contends, however, that his relationship with Transamerica was a simple commercial connection and that if any fiduciary relationship existed, it was between Transamerica and Comet.

The Bankruptcy Judge found that Whitlock signed an agency agreement with Transamerica as president of Comet Insurance Agency.[16] The agreement is dated May 2, 1973. Under the agreement, Comet was obligated to submit a monthly statement of account to Transamerica showing policies sold and premiums due. The collected premiums were to be remitted to Transamerica within 45 days after the end of the month to which they applied. (Tr. 75–76). The agreement specifically provided that all premiums collected by Comet on behalf of Transamerica were held in trust

and that the agent's privilege of retaining its commission did not alter this fiduciary relationship. (Tr. 77).

■ The provisions of the agency contract were enough to create a fiduciary relationship between Whitlock and Transamerica. In this situation, it is not significant that the corporate veil of Comet was used to conduct the insurance business. See, *Morgan v. American Fidelity Fire Insurance Company,* 210 F.2d 53, 54–55 (8th Cir. 1954).

Even in the absence of the contractual provisions, Whitlock occupied a fiduciary position under Missouri and Kansas Law.[17] Sections 40–239 and 40–247, K.S.A., and sections 375.051 and 375.121, RSMo (1969), specifically provide that premiums collected on behalf of an insurance company are held in trust by the agent. The policy and effect of these statutes is to create a *personal liability* upon an individual who receives and controls premium funds intended to be paid to the company providing the coverage on the insured property, regardless of whether the agency through which he acts is incorporated. *Southern Agency Co. v. LaSalle Casualty Co.,* 393 F.2d 907 (8th Cir. 1968).[18]

Fiduciary status under 11 U.S.C. § 35(a)(4) can be created by state law. *In re Romero,* 535 F.2d 618 (10th Cir. 1976). See generally, 1A *Collier on Bankruptcy,* ¶ 17.24[4], n. 15, p. 1710 (1976). Whitlock's failure to remit the premiums collected on behalf of Transamerica created a personal liability and constituted a "misappropriation" within the meaning of 11 U.S.C. § 35(a)(4). *Arnold v. Employers Insurance*

**16.** Whitlock disputes this factual finding. However, there is ample evidence to support it, including Whitlock's own admission that he "signed as president." (Tr. 95). See also, Tr. 75, 97–98. In any event, this finding is not "clearly erroneous." See, Part II, *supra.*

**17.** The Bankruptcy Judge assumed that Kansas law applied on the issue of Whitlock's fiduciary status. Whitlock contends that he is not bound by Kansas law because he was not licensed as an insurance agent in Kansas. The Court has received an amicus brief from Jerry Buxton, Director of the Missouri Division of Insurance,

setting forth the applicable Missouri law. Since the law of the two states is virtually identical on this issue, a choice of law is unnecessary.

**18.** This statutory liability lifts the protection normally afforded by the corporate veil. It is the absence of such a source of liability that necessitates reversal of the Ealy-Campbell and Kansas claims. Compare, *Kaufman v. Lederfine, supra* at note 12. It is the presence of a source of liability that necessitates affirmance of the Transamerica claim.

*of Wassau,* 465 F.2d 354 (10th Cir. 1972). Therefore, that liability is not dischargeable in bankruptcy and the Bankruptcy Judge's decision on this claim will be affirmed.

## VII.

In view of the foregoing, it is

ORDERED that the judgment in favor of Ealy-Campbell Mobile Homes, Inc., entered March 18, 1977, be, and the same hereby is, reversed; and it is

ORDERED that the judgment in favor of Kansas Mobile Homes, Inc., entered March 18, 1977, be, and the same hereby is, reversed; and it is

ORDERED that the judgment in favor of Wolverine Insurance Corporation,[19] entered March 18, 1977, be, and the same hereby is, affirmed. Each party is to bear its own costs.

---

**19.** See note 2, *supra.*